MADELINE JASMINE, Judge Pro Tempore.
 

 12Pefendant Kerry Savoie appeals his conviction for possession of cocaine, a violation of LSA-R.S. 40:967 C. On appeal, he argues that the trial court erred in denying his Motion to Suppress Evidence, and that his sentence is excessive. For the following reasons, we affirm the conviction and sentence.
 

 FACTS
 

 Detective Eric Dufrene of the Jefferson Parish Sheriffs Office, Narcotics Division, testified
 
 [1]
 
 that he and a partner, Agent Morris, were conducting surveillance on a residence at 801 Garden Road in Westwe-go at around 10 p.m. on February 29, 2008, due to tips and citizen complaints about possible narcotics activity at the location. He explained that this was the first time he had conducted | .¡surveillance at this location, having visited it only once before with an informant so that he knew the location. Det. Dufrene testified that he watched the residence from a vantage point around 100 feet away'
 
 [2]
 
 with high-powered binoculars, while his partner maintained another position around the corner out of sight of the location. He testified that this was standard procedure, in order not to alert occupants of the sur
 
 *210
 
 veillance. He testified that he and his partner were in radio contact.
 

 As Det. Dufrene watched the residence, after about 35 minutes, he noticed a large flat-bed Dale’s tow truck pull up to the side of the residence and park partially on the grass. The truck stayed running while the passenger got out. Det. Dufrene described how the passenger, later identified as defendant Kerry Savoie,
 
 [3]
 
 knocked at the home’s side door, went inside for approximately 2-8 minutes, and then returned to the tow truck, which remained parked for approximately one minute until it pulled away from the residence. The driver was identified as Donald Foucha.
 

 When the truck pulled away, Det. Du-frene followed it and radioed his partner Agent Morris, who joined him following the tow truck as it traveled to the West-bank Expressway (lower portion), where the driver committed a traffic violation by failing to signal a turn. The truck toned onto Victory Drive, where it pulled into an apartment complex and backed into a parking space. Det. Dufrene explained that they followed the truck from the Garden Road home because he believed some kind of narcotics transaction had taken place inside the residence, and he had reason to believe that there were narcotics in the truck. He explained that the truck’s activity at the home was inconsistent with towing work, as there |4appeared to be no disabled vehicle, nor did the passenger or driver use a clipboard consistent with paperwork necessary for a tow, nor was parking on the grass consistent with towing activity.
 

 Det. Dufrene stated that they did not pull the truck over when it committed the traffic violation, instead electing to follow it to its final destination so as to not jeopardize the surveillance. As the truck backed into a parking spot at the apartment complex, the two narcotics detectives both pulled into the parking lot and parked their vehicles on either side of the tow truck, but not blocking it in. Det. Dufrene testified that it was his intention to conduct a traffic stop at that time due to the truck driver’s failure to use his tom signal, as well as his reasonable suspicion that narcotics might be in the truck. As Du-frene was walking towards the tow truck, Savoie opened his door to get out, at which point Dufrene smelled the strong odor of burnt marijuana. At that point, Dufrene testified he identified himself and cuffed Savoie, while Agent Morris cuffed Foucha, who had also exited the truck. Det. Du-frene testified that at that point, neither man was free to leave.
 

 Det. Dufrene testified that he approached the truck to search it, and saw, on plain view on the front bench seat,
 
 [4]
 
 a clear bag of a white powdery substance later testified and identified as cocaine. He explained that the parking lot was well lit by overhead lighting and he had a clear view inside the truck. He said he saw, also in plain view, two partially burnt marijuana cigarettes in the ashtray. He retrieved this evidence, field tested it, and arrested both men for possession of marijuana and possession of cocaine.
 
 [5]
 

 On cross examination, Det. Dufrene acknowledged that he did not observe Savoie carrying anything to the tow truck after
 
 *211
 
 leaving the residence, nor did he |ssee the truck’s occupants engaged in any suspicious activity while driving from Garden Road to the apartment complex on Victory Drive. He did not observe them smoking, nor did he see smoke. He was able to see their heads as he followed them in his unmarked car, but did not see any specific activity, as the truck’s dome light was not on while the doors were closed. Nor was he using his binoculars as he followed the truck away from the residence.
 

 Det. Dufrene further explained that as the truck parked in the apartment complex, he pulled up on the passenger side of the truck and his partner pulled up on the driver’s side, though neither of them blocked the truck in any way. He said that they identified themselves as police officers, but did not order either man out of the truck, as both were getting out on their own at the time the police pulled up. Det. Dufrene stated that Savoie gave him verbal consent to search his apartment for a Soma prescription bottle, because Savoie had several Soma tablets in his pocket when he was arrested. Det. Dufrene testified that he conducted a brief search of Savoie’s apartment, with Savoie present, but was unable to locate the prescription at that time. Savoie was later able to provide the prescription, at which time those charges were dropped. No other drugs were found in Savoie’s apartment.
 

 Agent Morris, also of the Jefferson Parish Sheriffs Office narcotics division, testified about his role in the surveillance. His testimony was essentially cumulative of Det. Dufrene’s, except Morris testified that he and Dufrene were in plain clothes, whereas Dufrene testified that both men were in full raid dress and police shirts.
 

 The defense called Mandy Thibodeaux, who testified that she was a friend of Savoie’s and happened to drive up to the apartment complex as Savoie and Foucha were being detained by Det. Dufrene and Agent Morris. She testified that they | (¡searched her purse and the car in which she was riding, but she was allowed to go. She said that Savoie had given her his Soma prescription bottle to hold.
 

 Donald Foucha, the driver of the tow truck, testified that he pleaded guilty to possession of cocaine and possession of marijuana stemming from this incident. He testified that Savoie did not purchase the drugs at the Garden Road residence, as they were Foucha’s and were already in his truck at the time. Foucha testified that he was Savoie’s neighbor, and that he was giving Savoie a ride to 801 Garden Road, where Savoie’s brother-in-law lived.
 

 Foucha testified that at first, when the police observed the cocaine on the seat, he played dumb about the cocaine, denying he knew where it came from. He next said that the police coerced him into implicating Savoie (that Savoie purchased it for him at the Garden Road house for $120 that he gave Savoie) because he did not want his truck impounded. Foucha testified that the police searched his apartment, where they found additional marijuana. He said that he signed the consent to search form after the fact, but that the police never asked for his consent to search, nor did they read him his rights, contrary to their testimony.
 

 Foucha specifically denied that he ever told the police that he gave Savoie the money to purchase the cocaine. He claimed that he told them that the drugs were his alone, that Savoie did not buy them, but that he (Foucha) bought them on the street. Foucha first claimed that the cocaine was in his truck in the center console, which was closed, and that the front seat was a bucket-type with a 60/40 split, contrary to Det. Dufrene’s claim that it was a bench seat. He then explained that when he saw the police, he took the
 
 *212
 
 cocaine out of the console and jammed it between the seats. He also denied making any statements to the police while at headquarters. Finally, Foucha agreed that he and Savoie had discussed the case prior to Savoie’s trial.
 

 |7The State called Det. Dufrene in rebuttal, who stated that he did advise Foucha and Savoie of their rights, and that Foucha signed the consent to search form prior to the search of his apartment. Dufrene further noted that Foucha was very cooperative. He said that Foucha told him that he had given Savoie $120 to purchase the cocaine for him.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 The defendant complains in brief that the trial court erred in failing to grant his motion to suppress the evidence.
 
 [6]
 
 He seems to argue, however, a combination of a suppression of the evidence claim and a sufficiency of the evidence claim. In an abundance of caution, this court addresses both issues.
 

 When the constitutionality of a wari’antless search or seizure is lolaced at issue by a Motion to Suppress the Evidence, the State bears the burden of proving the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. art. 703(D);
 
 State v. Parnell,
 
 07-37, (La.App. 5 Cir. 5/15/07), 960 So.2d 1091. The trial court’s decision to deny a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Bergman,
 
 04-435, (La.App. 5 Cir. 10/12/04), 887 So.2d 127.
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Law enforcement officers are authorized to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity. LSA-C.Cr.P. art. 215.1;
 
 State v. Gray,
 
 06-298, (La.App. 5 Cir. 10/31/06), |8945 So.2d 798, writ denied, 06-2958 (La.9/14/07), 963 So.2d 993. “Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference.
 
 Id.
 
 at 7, 945 So.2d at 801.
 

 Additionally, a violation of a traffic regulation provides reasonable suspicion to stop a vehicle.
 
 State v. Gray, supra.
 
 Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is authorized to order both the driver and passenger out of the vehicle pending completion of the stop.
 
 State v. Gomez,
 
 06-117, (La.App. 5 Cir. 11/28/06), 947 So.2d 81, citing
 
 Maryland, v. Wilson,
 
 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).
 

 The plain view doctrine is an exception to the warrant requirement and applies if (1) the police officer is lawfully in the place from which he views the object, and (2) it is immediately apparent, without close inspection, that the item is contra
 
 *213
 
 band.
 
 State v. Gray, supra
 
 at 7, 945 So.2d at 802.
 

 The facts in this case show that Det. Dufrene and Agent Morris intended to conduct a traffic stop of the tow truck, both because they observed the driver commit a traffic violation
 
 [7]
 
 , and their reasonable suspicion that there were narcotics in the truck due to them observation of the activity while at the Garden Road house. The facts also show that the driver had parked the truck and the occupants were exiting the truck on them own when Det. Dufrene approached and asked if he could speak with them. At that point, Det. Du-frene smelled the burnt marijuana, which, we find, gave the officers probable cause to detain the truck’s occupants. After the defendant and Foucha were handcuffed, Det. Dufrene approached the truck in |9order to search it, and saw, in plain view, both the burnt marijuana cigarettes in the ashtray and the clear plastic bag of cocaine on the front seat.
 

 We find no violation of the Fourth Amendment in the officer’s actions and the seizure of the marijuana and cocaine. The officers were about to conduct a traffic stop, when the smell of burnt marijuana coming from the truck’s cab provided them with additional and independent probable cause to detain the occupants. Thereafter, Det. Dufrene observed the seized drugs in plain view inside the cab of the truck. Accordingly, we see no error in the trial court’s denial of the motion to suppress.
 

 Nor do we find any merit to the defendant’s argument that there was insufficient evidence. Savoie argues in brief that there was no evidence that he was engaged in illegal activity prior to his arrest. On the contrary, evidence was presented, which the trial court found credible, that Savoie pm-chased the cocaine at the Garden Road location. This evidence consisted of the activity that Det. Dufrene observed while conducting the surveillance, as previously described. Further, the bag of cocaine was found on the seat of the truck between the two occupants, from which the trier of fact could conclude that Savoie had dominion and control of it so as to constitute constructive possession.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 The defendant contends that he was sentenced in this case to serve six months for the crime of possession of marijuana. He contends that the sentence for possession of marijuana is illegal because it is not responsive to the charged offense of possession of cocaine.
 

 A review of the record shows that Sa-voie was arrested both for possession of marijuana (case number 08-1633) and possession of cocaine (case number 08-|1632).in The two matters were charged under different case numbers and different bills of information. Because the possession of marijuana charge is a misdemeanor, it was tried by the judge separately at the same time the jury considered the possession of cocaine charge. In the trial transcript, while the jury was deliberating on the possession of cocaine charge, the trial judge found the defendant guilty of the possession of marijuana charge. Thereafter, the defendant was sentenced to six months in jail for the marijuana charge. It is clear that that sentence pertains to case number 08-1633 and not the possession of cocaine charge in 08-1632. Defen
 
 *214
 
 dant’s assignment of error, therefore, has no merit.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We find the following matters.
 

 In imposing sentence, the trial court failed to advise of the time limit for seeking post-conviction relief as per Article 930.8(C) of the Louisiana Code of Criminal Procedure. We, therefore, remand this matter to the trial court with instructions: first, inform defendant of the prescriptive period, set forth by La.C.Cr.P. art. 980.8, by sending written notice to defendant within ten days of the rendition of this opinion and, second, file written proof in the district court record that defendant has been given such notice.
 
 State v. Fazande,
 
 05-901, p. 10 (La.App. 5 Cir. 3/28/06), 927 So.2d 507, 513-14.
 

 Second, the commitment order indicates that the defendant’s sentence is three years imprisonment at hard labor. In sentencing the defendant, the trial judge stated: “The Court is going to sentence you to a period of three years in the custody of Department of Corrections, giving you credit for time sei'ved.” The trial court hJhus failed to specifically state that the sentence was to be at hard labor. However, in
 
 State v. Vance,
 
 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, 109, this Court found under similar circumstances that it was not necessary to remand for re-sentencing, as only individuals actually sentenced to death or confinement at hard labor shall be confined to the Department of Corrections.
 

 Accordingly, defendant’s conviction and sentence are affirmed.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . The hearing on the motion to suppress was held immediately prior to the trial. The testimony at both the hearing and the trial from Det. Dufrene and Agent Morris was essentially the same. The defense witnesses at trial did not testify at the suppression hearing.
 

 [2]
 

 . Initially, Det. Dufrene stated that he was positioned 100
 
 yards
 
 away, but clarified this point on cross-examination.
 

 [3]
 

 . Det. Dufrene stated that he got a clear look at Savoie with the binoculars.
 

 [4]
 

 . Det. Dufrene testified that this tow truck had a bench seat with no console in between the driver and the passenger on the seat.
 

 [5]
 

 .Del. Dufrene testified that Savoie was also charged with possession of a legend drug, carisprodol (Soma), because he found several tablets in Savoie’s pocket and Savoie was unable to provide the prescription at that time.
 

 [6]
 

 . This court notes that no written motion appears in the record before the Court. A motion to suppress should be in writing.
 
 State v. Royal,
 
 255 La. 617, 232 So.2d 292 (La.1970). The State did not object to the procedural deficiency and a suppression hearing was held. Because the trial court took up the motion to suppress, which it heard immediately prior to trial, this Court may review that ruling.
 
 State v. Davis,
 
 02-1008, p. 5 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 958,
 
 writ denied,
 
 03-0948 (La.11/7/03), 857 So.2d 516.
 

 [7]
 

 . LSA-R.S. 32:104(B) provides that a person who intends to make a right or left turn that will take his vehicle from the highway it is then traveling, shall signal the intention to turn continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.