WALTER J. ROTHSCHILD, Judge.
 

 |2On September 30, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Samuel J. Martin, with possession of a firearm by a convicted felon (Count 1), aggravated assault upon a peace officer with a firearm (Count 2), and public intimidation (Count 3), in violation of LSA-R.S. 14:95.1, 14:37.2, and 14:122, respectively. He pled not guilty. On June 22, 2010, a jury found defendant guilty as charged on Count 1, and not guilty on Counts 2 and 3. On August 2, 2010, the trial judge sentenced defendant to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence. On that same date, the State filed a multiple bill alleging defendant to be a fourth felony offender, and defendant denied the allegations of the multiple bill.
 

 On August 12, 2010, a multiple bill hearing was held, and the trial judge found defendant to be a fourth felony offender. The trial judge vacated the original sentence and resentenced defendant under the multiple bill statute to thirty years of imprisonment without benefit of probation or suspension of sentence.
 

 |,FACTS'
 

 Officer Ryan Mekdessie of the Gretna Police Department testified that on September 13, 2009, at approximately 10:00 p.m., he was traveling on Lafayette Street, which turns into Belle Chasse Highway, when he observed a white Acura traveling southbound with a broken taillight on the passenger side. He activated his lights and sirens in an attempt to stop the vehicle, but the Acura did not stop. Instead, the vehicle continued southbound on Belle Chasse Highway, turned right onto 19th Street, made a left turn onto Newton Street, and then either pulled into the driveway or onto the grassy area in front of a residence at 1908 Newton Street.
 

 
 *233
 
 The officer stopped behind the Acura and exited his vehicle. At that time, the driver of the Acura, later identified as defendant, opened his door. Officer Mek-dessie ordered defendant to shut the door. According to the officer, defendant then exited his vehicle with a pistol grip shotgun, turned toward Officer Mekdessie’s direction, and pointed the weapon at him. Officer Mekdessie retrieved his duty weapon and ordered defendant to drop his weapon. Defendant dropped the shotgun next to the driver’s side door and then fled. Officer Mekdessie holstered his weapon, grabbed his taser, and gave chase. He deployed his taser, but missed defendant.
 

 When Officer Mekdessie noticed that there were two other people in the Acura, he grabbed his duty weapon and ordered the subjects to show him their hands and stay in the vehicle. The back seat passenger did not comply and exited the vehicle. The back seat passenger was tasered and eventually arrested for interfering, resisting, and possession of marijuana. Officer Mekdessie then spoke to the front seat passenger, defendant’s girlfriend, who was cooperative and told the officer the identity and address of the driver.
 

 14 Officer Mekdessie set up surveillance of the residence where he believed defendant lived. At some point, he saw defendant walking alongside the house, and assisting units were able to apprehend defendant and transport him to jail. According to Officer Mekdessie, when he arrived at the jail and escorted defendant inside, defendant told him the last thing the officer was going to see was the flash from his gun. Officer Mekdes-sie testified that when he later checked to see if defendant’s shotgun was loaded, it did not have any live rounds in it.
 

 Aischa Prudhomme, an expert latent fingerprint examiner, testified that she took defendant’s fingerprints and compared them with the fingerprints contained in State’s Exhibit 3 (documents pertaining to a prior conviction for carjacking in case number 04-1856, including a bill of information, a guilty plea form, and a minute entry) and State’s Exhibit 4 (documents pertaining to a prior conviction for possession of cocaine in case number 04-55, including a bill of information, arrest card, guilty plea form, and a minute entry). Ms. Prudhomme found that the fingerprints in all of the exhibits were made by the same person, defendant.
 

 After the State rested its case, the defense called Josephine Martin, defendant’s girlfriend, as a witness. Ms. Martin testified that on September 13, 2009, she, defendant, and Conrad Jackson were in a car on their way to defendant’s father’s house on Newton Street when an officer pulled them over. She testified that defendant opened the door and exited the vehicle, but did not pull out a weapon or point a weapon at the officer. Ms. Martin stated that when defendant closed the door, he saw the police and ran. Ms. Martin explained that after defendant ran, the back seat passenger got out of the vehicle, and the officer tasered him. She did not remember telling the officer that when defendant was coming to a stop, he was pulling the shotgun from his pants leg. She claimed she did not see the gun until after the officer closed the door.
 

 | ^Reginald Scott testified for the defense that on September 13, 2009, he was at a block party when he saw a white car “flying” down the street with a police car following it. A man got out of the car and ran, and the officer chased him and shot a taser. Scott also saw a short person or a child in the front passenger seat, and a man get out of the back seat and throw something. He admitted that he had five
 
 *234
 
 convictions and a pending charge and that he did not see everything that happened.
 

 Joseph Cross, III, testified for the defense that on September 13, 2009, he was on the porch at 1904 Newton Street when he observed a white car pull up at approximately 9:30 to 10:00 p.m. A police car pulled up behind it, and the officer ordered the man to get out of the car. When the man, whom he identified as defendant, jumped out of the car, the officer pulled a taser out and told defendant to get back into the car. Defendant did not comply with that order, so the officer shot the taser at defendant, and defendant ran off. Mr. Cross testified that the police “beat the hell” out of the man in the back of the car, tasered him, put him in the back of the police car, and took off. Mr. Cross never saw a gun pointed at the police officer, and he did not see a gun that night. Mr. Cross admitted he had four convictions in 1997 for “distribution.”
 

 Shawn Clark testified for the defense that on September 13, 2009, he attended a small party on Newton Street. While they were outside, he noticed an officer pull a man over. He identified defendant in court as that man. Defendant got out of the car and walked toward the officer, but the officer told defendant to go back to his car. Defendant walked toward his car and then took off running. Mr. Clark testified that he did not see defendant pull a gun or any weapon, but he did see a gun thrown from the back area of the car. He said the gun appeared after defendant ran away. According to Mr. Clark, the officer shot his taser at defendant, and then chased defendant, but not very far. Mr. Clark testified that the |fiman in the back seat was beaten badly, and that the officers tasered and kicked him all over. He admitted that he had five convictions.
 

 On rebuttal, Officer Mekdessie testified that at no point was a weapon thrown from the back of the car, and that he did not have a fight with the back seat passenger.
 

 LAW AND DISCUSSION
 

 On appeal, defendant’s counsel and defendant in his pro se brief argue that the evidence was insufficient to support the jury’s verdict. Defendant contends that only one of the seven witnesses at trial, Officer Mekdessie, testified that he possessed a gun, and that many of the officer’s recollections were hard to believe, exaggerated, and could not possibly have occurred. Defendant also contends that the officer failed to cite him for the cracked taillight, and that the State failed to prove he actually or constructively possessed the seized weapon.
 

 The State responds that the evidence was sufficient to support the verdict, noting that Officer Mekdessie testified that defendant exited his vehicle after the traffic stop with a pistol grip shotgun in his hand and pointed the weapon at the officer. The State also asserts that three of the four defense witnesses were convicted felons, each telling a different version of events. The State argues that the jury made its credibility determinations, and that even if the back seat passenger did throw a gun from the back of the car, the jury could have still found that defendant had constructive possession of that weapon.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied, 535
 
 U.S.
 
 *235
 
 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
 

 In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
 

 In the instant case, defendant was convicted of possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1. In order to convict a defendant of violating LSA-R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense.
 
 State v. Watson,
 
 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
 

 On appeal, defendant does not challenge the evidence as to his prior convictions or the ten-year cleansing period. The issue defendant raises on appeal is whether he had either actual or constructive possession of the weapon. Whether the proof is sufficient to establish possession turns on the facts of each case.
 
 State v. Harris,
 
 94-970 (La.12/8/94), 647 So.2d 337, 338-39 (per curiam). To establish possession of a firearm by a convicted felon, proof is required that the offender was aware that a firearm was in his presence, and that he intended to possess the | sweapon.
 
 State v. Lee,
 
 02-0704, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593,
 
 writ denied,
 
 03-0535 (La.10/17/03), 855 So.2d 755. Such guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence.
 
 State v. Johnson,
 
 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998.
 

 Constructive possession of a firearm exists when a firearm is subject to a person’s dominion and control.
 
 Johnson,
 
 03-1228 at 5, 870 So.2d at 998. Even where a person’s dominion over the weapon is only temporary in nature and control is shared, constructive possession exists.
 
 Id.,
 
 03-1228 at 5, 870 So.2d at 999;
 
 State v. Blount,
 
 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775. It is noted that the jury in the instant case was instructed as to both actual and constructive possession.
 

 At trial, the State presented Officer Mekdessie who testified that he stopped defendant’s vehicle after noticing that the rear taillight on the passenger side was broken. He further testified that defendant exited his vehicle with a pistol grip shotgun, turned toward him, and pointed the weapon at him. Officer Mekdessie explained that he retrieved his duty weapon and ordered defendant to drop his weapon, and that defendant dropped the shotgun and fled.
 

 On the other hand, the defense presented four witnesses, three of whom had numerous convictions, who gave different versions of the incident. Ms. Martin, defendant’s girlfriend, claimed she did not see the gun until after the officer closed the door. Mr. Cross, a convicted felon, testified that he did not see any guns at the scene. However, Mr. Clark, a five-
 
 *236
 
 time convicted felon with a pending charge, testified that he saw a gun thrown from the back of the car, and that the gun appeared after defendant ran away. Mr. Scott, also a five-time convicted felon with a pending charge, testified that he saw the back seat passenger exit the vehicle and throw something. Mr. Cross and Mr. Clark also recalled that the back seat |flpassenger was beaten badly; however, Ms. Martin testified that the officers did not hit the back seat passenger.
 

 After listening to the witnesses’ testimony and considering all the other evidence as well, the jury apparently found that defendant either actually or constructively possessed the weapon. The credibility of witnesses is within the sound discretion of the trier of fact, and the credibility of the witnesses will not be reweighed on appeal.
 
 State v. Rowan,
 
 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
 

 Considering the evidence presented at trial and the pertinent law, we find that a rational trier of fact could have found under the
 
 Jackson
 
 standard that the evidence was sufficient to show that defendant actually possessed the weapon, and that the evidence as a whole was sufficient to support the verdict. Accordingly, this assignment of error is without merit.
 

 Defendant’s counsel and defendant in his pro se brief also argue that the trial judge erred by denying his motion to suppress the evidence. Defendant contends that the evidence should have been suppressed because the traffic stop for a cracked taillight, a minor offense, was pre-textual, and no evidence was presented other than the officer’s testimony to show that the taillight was cracked, such as a traffic citation or a photograph. He also argues that Officer Mekdessie was not credible, which was shown when the jury found defendant not guilty of aggravated assault of an officer and public intimidation, despite the officer’s assertions.
 

 The State responds that the trial judge did not err by denying the motion to suppress the evidence. It contends that the officer was justified in conducting a traffic stop because defendant’s vehicle was in violation of state law, and that pretext traffic stops are not per se improper as long as the officer has probable cause to believe a traffic violation has occurred. The State further responds that |10even though
 
 there
 
 was no citation for the traffic offense or photograph of the cracked taillight, the trial judge obviously believed the officer’s testimony that defendant committed a traffic violation.
 

 On May 26, 2010, defendant filed a motion to suppress the evidence, claiming that the evidence should be suppressed because it was illegally obtained. Officer Mekdessie testified at the suppression hearing, and his testimony was similar to his trial testimony. Defense counsel argued at the hearing that a cracked taillight was not enough to stop defendant because the brake lights were working and defendant did not endanger anyone. He noted that no citation was issued which proved that defendant did not violate any law. Based on the foregoing, defense counsel asked the trial judge to suppress the evidence.
 

 The prosecutor responded that defendant violated Louisiana law when he failed to have equipment in the proper condition on his vehicle. The prosecutor further responded that he tells officers that it is unnecessary to issue citations if there is a more serious criminal offense involved. He argued, therefore, that the fact that the officer did not write a ticket was irrelevant as to whether there was an initial reason to pull the car over. The prosecutor also argued that the evidence was abandoned and legally seized. The trial
 
 *237
 
 judge agreed with the prosecutor’s arguments and denied the motion to suppress the evidence.
 

 Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures.
 
 State v. Roche,
 
 05-237, p. 7 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765,
 
 writ denied,
 
 06-1566 (La.1/8/07), 948 So.2d 120. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement.
 
 Id.
 

 |nThe trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Williams,
 
 10-51, p. 5 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471,
 
 writ denied,
 
 10-2083 (La.2/18/11), 57 So.3d 330. To determine whether the trial court’s denial of a motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial.
 
 Id.
 

 The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by State and federal jurisprudence.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Generally, “the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred.”
 
 State v. Waters,
 
 00-356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056 (quoting
 
 Whren v. United States,
 
 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996)). The standard is purely objective and does not take into consideration the subjective beliefs or expectations of the detaining officer.
 
 Id.
 

 In
 
 Whren v. United States,
 
 517 U.S. 806, 812-13, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), the United States Supreme Court clearly stated that a traffic-violation arrest is not rendered invalid by the mere fact it was a pretext for a narcotics search. The supreme court explained that “the fact that the officer does not have the state of mind which is hypothe-cated by the reasons which provide the legal justification for the officer’s action does not invalidate the action as long as the circumstances, viewed objectively, justify that action.”
 
 Whren v. United States, supra
 
 (quoting
 
 Scott v. United States,
 
 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)). The Louisiana Supreme Court has stated that “[although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.”
 
 State v. Waters,
 
 00-356 at 4, 780 So.2d at 1056.
 

 In
 
 State v. Davis,
 
 09-452 (La.App. 5 Cir. 1/26/10), 31 So.3d 513, defendant contended that the detective used the pretext of a broken taillight to justify the stop of his vehicle. The detective admitted that although he stopped the vehicle for a broken taillight, the stop was also based on information he learned from a confidential informant. This Court found that police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances.
 
 Id.,
 
 09-452 at 6, 31 So.3d at 517.
 

 In the instant case, the officer was justified in stopping defendant’s vehicle. Officer Mekdessie observed that defendant vi-
 
 *238
 
 dated a traffic law in that he had a broken taillight on his vehicle. The Jefferson Parish Sheriffs Office Arrest Report and Probable Cause Affidavit contained in the record show that defendant was charged with having improper equipment in violation of LSA-R.S. 32:53, which requires that a vehicle contain parts in proper condition.
 

 Moreover, there was no evidence that this stop was a pretext to investigate the commission of other crimes. However, even if it was, this Court indicated in
 
 Davis
 
 that police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for other crimes. Also, the fact that the officer did not issue a citation for the traffic offense is not relevant to the constitutionality of the stop.
 

 Additionally, at the suppression hearing, the trial judge heard the testimony of Officer Mekdessie regarding the traffic violation and subsequent stop and | ^apparently found him to be credible. The credibility of witnesses is best determined by the trial judge and is not to be disturbed on appeal unless the trial judge abuses his discretion.
 
 State v. Neuman,
 
 01-1066, p. 7 (La.App. 5 Cir. 4/10/02), 817 So.2d 180, 184. The record does not show that the trial judge abused her discretion in crediting the testimony of Officer Mekdessie.
 

 In light of the foregoing, we find that the trial judge did not err by denying the motion to suppress the evidence. Accordingly, this assignment of error is without merit.
 

 Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request.
 

 First, we note that the trial judge failed to impose the mandatory fine. LSA-R.S. 14:95.1 B requires a fine of not less than $1,000.00 nor more than $5,000.00. The State notes this error patent in its brief and asks this Court to remand for imposition of the mandatory fine. This Court has the authority to correct an illegally lenient sentence. LSA-C.Cr.P. art. 882. However, this authority is permissive rather than mandatory.
 
 State v. Pitt,
 
 09-1054, pp. 8-9 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224,
 
 writ denied,
 
 10-1141 (La.12/10/10), 51 So.3d 725.
 

 In the instant case, defendant appears to be indigent, since he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for imposition of the mandatory fine.
 

 Second, the transcript reflects that when defendant was originally sentenced on August 2, 2010, the trial judge properly advised him that he had two years after the judgment of conviction and sentence becomes final to seek post-conviction | ^relief. The transcript shows that on August 12, 2010, after the trial judge found defendant to be a fourth felony offender and resen-tenced him, she incorrectly advised him he had “two years from today’s date to seek post-conviction relief.” Also on August 12, 2010, defendant pled guilty to a misdemeanor battery on a police officer offense and was sentenced. The trial judge then correctly advised defendant he had two years after judgment of conviction and sentence becomes final to seek post-conviction relief.
 

 In order to clarify any discrepancy in the notifications provided by the trial judge to defendant, we hereby notify defendant that no application for post-convic
 
 *239
 
 tion relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after his judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922.
 

 Third, the transcript reflects that the trial judge correctly ordered the enhanced sentence to be served without benefit of probation or suspension of sentence pursuant to LSA-R.S. 15:529.1 G; however, she failed to also order that the enhanced sentence be served without the benefit of parole as required by the underlying statute, LSA-R.S. 14:95.1. The restriction on parole is statutorily mandated and self-activating, and the trial judge was without discretion to impose the sentence with the benefit of parole. Accordingly, there is no need to remand for resentencing. However, in order to ensure an accurate record, this matter is remanded for the limited purpose of ordering the district court to correct the commitment to reflect that the enhanced sentence is to be served without benefit of parole, probation, or suspension of sentence. We also direct the clerk of court for the 24th Judicial District Court to transmit the original of the commitment to the officer in charge of the institution to which defendant has been sentenced, and to the legal department of the Department of Public and Safety Corrections (DOC). 1 See
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
 

 DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and sentence. We also remand the case and order the trial court to correct the commitment to reflect that defendant’s enhanced sentence is to be served without benefit of parole, probation, or suspension of sentence. We further direct the clerk of court to transmit the original of the corrected commitment to the officer in charge of the institution to which defendant has been sentenced and to the legal department of the Department of Public Safety and Corrections.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.