*515
 
 MARION F. EDWARDS, Judge.
 

 12Defendant/appellant, Leroy A. Davis (“Davis”), appeals his conviction for possession of cocaine in violation of La. R.S. 40:967(F). We affirm and remand for the reasons herein.
 

 After his arrest, Davis pled not guilty to the charge. A motion to suppress evidence was filed and, after a hearing, denied. Following a jury trial, Davis was convicted and sentenced to twenty years at hard labor. A multiple bill was filed against him as a fourth felony offender, his original sentence was vacated, and he was re-sentenced to twenty years at hard labor. Davis has taken this timely appeal.
 

 The facts of the case as established at the suppression hearing and trial are as follows:
 

 At the hearing, Detective Wayne Williams (“Detective Williams”) of the Gretna Police Department testified that, on April 13, 2006, a confidential informant (Cl# 1) contacted “us” and stated that he knew of an individual who |scould deliver crack cocaine. Cl# 1 was someone the detective had used in the past and who had proven reliable. Based on that information, the officers conducted an operation whereby this individual was going to deliver crack cocaine.
 

 The officers conducted surveillance, followed the individual, and detained him for investigative reasons. When that individual was heading back to the target location where the transaction with Cl# 1 was going to take place, they stopped him and told him that they knew drugs were being sold from this location. The officers asked that individual if he wanted to cooperate and redeem himself, and he answered affirmatively. That individual, who then became a confidential informant (“Cl# 2”), stated that he could arrange for a delivery of crack cocaine by “Bootsy” who Detective Williams knew was Davis because there was an open investigation involving him. Also, Cl# 2 was shown a photograph of Davis who he positively identified as the person he knew as “Bootsy.”
 

 The officers arranged for Cl# 2 to call Davis and have Davis deliver crack cocaine. Cl# 2 called Davis on his cell phone and requested that he deliver two and a quarter ounces of crack cocaine to the Circle K at 929 Lafayette Street in Gretna, Louisiana. Detective Williams overheard the conversation by putting his head next to Cl# 2’s phone during the call. Davis’ name or nickname was used during that phone call, and the person on the other end of the line responded to it. Davis told Cl# 2, “Okay. I’ll be there shortly.” Detective Williams stated that Cl# 2 was an untested informant.
 

 After Cl# 2 arranged for Davis to deliver cocaine, Detective Williams and other officers began surveillance of 929 Lafayette Street. At some point, Detective Williams observed Davis pulling into the parking lot at that location in a silver Camaro, a car the detective had stopped the day before for a “burned out” taillight. Because the taillight was still broken, Detective Williams conducted a stop on 11,Davis. Detective Williams approached the vehicle, removed Davis, and patted down his outer clothing to determine whether Davis had weapons or contraband. At that time, there was an open investigation on Davis for “narcotics and weapons.”
 

 As he was patting down Davis, he felt a distinct rigid object in his front pocket. The detective testified that it was immediately apparent that the object was the crack cocaine that Cl# 2 had ordered from Davis. He retrieved the object and verified that it was crack cocaine. He also found $4,863 in Davis’ right front pocket. Detective Williams placed Davis under arrest for
 
 not
 
 having the proper equipment
 
 *516
 
 on his vehicle and read him his rights. Later at the police department, Davis said that he would be able to deliver more narcotics in exchange for leniency on his charges.
 

 At trial, Andrea Travis, an expert in the testing, analysis, and examination of controlled dangerous substances, testified that the substance in this case tested positive for cocaine and had a net weight of 60.68 grams, which did not include the baggy in which it was found. She could not testify as to what percentage of that substance was cocaine.
 

 MOTION TO SUPPRESS
 

 Davis argues that the trial court erred by denying his motion to suppress evidence. He contends that there was no valid Terry
 
 [1]
 
 weapons frisk because Detective Williams never suspected that the object was a weapon, nor could he discern that the object might be contraband. Davis also contends that the search could not be justified by a showing of probable cause to search or indirectly through a search incident to an arrest premised on probable cause. He asserts that his arrest for the broken taillight was a pretext, and that Detective Williams used |fithis minor traffic violation as an excuse for reaching into his pocket and retrieving the object that was not a weapon. He further urges that the detective’s decision to search was based on unconfirmed information which might have given rise to reasonable suspicion, but not probable cause.
 

 When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving the admissibility of any evidence seized without a warrant.
 
 [2]
 
 The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed unless the preponderance of the evidence clearly favors suppression.
 
 [3]
 

 VALIDITY OF THE STOP
 

 Law enforcement officers are authorized to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity.
 
 [4]
 
 “Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference.
 
 [5]
 
 Additionally, a violation of a traffic regulation provides reasonable suspicion to stop a vehicle.
 
 [6]
 
 The Second Circuit has found that the initial stop of the suspects was proper after the officer observed that they violated a traffic violation by having a broken taillight on their vehicle.
 
 [7]
 

 | (iIn the instant case, Detective Williams observed that Davis violated a
 
 *517
 
 traffic law, in that he had a broken taillight on his vehicle. The Jefferson Parish Sheriffs Office arrest report and probable cause affidavit indicate that Davis was charged with a violation of La. R.S. 32:53, which statute requires proper equipment on vehicles.
 

 Davis contends that the detective used the pretext of the broken taillight to justify a stop. Detective Williams admitted that, although he stopped the vehicle for a broken taillight, the stop was also based on the information he learned from the confidential informant. Police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances.
 
 [8]
 
 Generally, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred, and the standard is purely objective, without taking into consideration the subjective beliefs or expectations of the detaining officer.
 
 [9]
 
 “Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.”
 
 [10]
 
 The initial stop of Davis was proper.
 

 VALIDITY OF PAT DOWN SEARCH
 

 After a traffic stop, an officer may conduct a protective frisk of the person if he reasonably suspects he is in danger.
 
 [11]
 
 It is recognized that there is a close association of weapons and narcotics trafficking.
 
 [12]
 

 [yDetective Williams testified that he was familiar with Davis because he had arrested him in the past, knew he had prior felony convictions, and knew there was an open investigation of Davis involving narcotics and weapons. Detective Williams further testified that Davis’ previous arrest would have led him to believe that weapons may have been involved, and that, in his experience, weapons might be present when large amounts of narcotics were involved. After Davis pulled into the parking lot, Detective Williams approached the vehicle and removed Davis for officer safety. He subsequently conducted a pat down of Davis’ outer clothing to determine whether he had weapons or contraband.
 

 The evidence demonstrates that the detective possessed an objective and articula-ble basis for conducting a self-protective frisk of respondent. Thus, the protective frisk of Davis was lawful.
 

 When an officer is conducting a pat down search, the “plain feel” exception allows the seizure of contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband.
 
 [13]
 
 During the pat down in the pres
 
 *518
 
 ent case, Detective Williams felt a distinct rigid object in Davis’ front pocket, which he knew, from past experience, had been found to be crack cocaine. Because he knew that Cl# 2 had ordered two and a quarter ounces of crack cocaine from Davis, it was immediately apparent to him that the object was the crack cocaine that Cl# 2 had ordered from Davis.
 
 [14]
 
 Under the plain feel exception to the warrant requirement, the evidence was validly seized.
 

 ^Accordingly, we find the trial court properly ruled the evidence should not be suppressed. This assignment is without merit.
 

 AMOUNT OF COCAINE
 

 Davis also contends that the trial judge erred by refusing to allow him to argue that the State failed to prove the amount of cocaine necessary for this conviction. He further urges that the trial judge erred by refusing to give an amended jury instruction regarding the definition of the crime, asserting that the instruction should have been given because the State did not prove the amount of pure cocaine in the substance that was analyzed.
 

 The record shows that, at the jury charge conference, defense counsel requested that the trial judge amend the jury instruction regarding the definition of the crime to show that the State had to prove Davis not only knowingly and intentionally possessed cocaine, but that he knowingly and intentionally possessed 28 to 200 grams of cocaine. The trial court stated that it was not the intent of the legislature to require the State, through affirmative evidence, to present proof to satisfy the jury that Davis presumably weighed the substance and knew that it weighed 28 grams or more but under 200 grams. The court found this was not the applicable law and would not allow the instruction. Defense counsel was given the opportunity to proffer evidence for appellate purposes.
 

 Defense counsel also requested that the trial judge allow him to argue to the jury as his defense the same fact, that the State had failed to prove, and that it had a responsibility and burden to prove, that Davis knowingly and intentionally possessed 28 to 200 grams of cocaine. The trial court denied the request for the same reasons he denied the jury charge.
 

 The transcript indicates that the prosecution gave its closing argument, but defense counsel did not. After the jury retired to consider its verdict, defense 19counsel subsequently made a proffer for appellate purposes stating that his basis for the requested jury charge was LSA-R.S. 40:967(F)(l)(a). He argued that there was no evidence to indicate that Davis knowingly possessed any amount of cocaine or that he knew how much cocaine he possessed, and that this was his defense in the case. Because he would not argue to the jury something that would have placed him in contempt of court, he did not argue at all.
 

 Davis did not argue in the trial court that the State did not prove the amount of pure cocaine found in the substance analyzed. A new basis for an objection may not be raised for the first time on appeal.
 
 [15]
 
 Therefore, the assignment of
 
 *519
 
 error is limited to the grounds raised in the trial court.
 

 The jury was instructed, in pertinent part, as follows:
 

 The defendant is charged with possession of 28 grams or more but less than 200 grams of a controlled dangerous substance, to wit: Cocaine.
 

 It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II....
 

 It is unlawful for any person knowingly or intentionally to possess cocaine in the amount of 28 grams or more but less than 200 grams of Cocaine or of a mixture or substance containing a detectable amount of Cocaine or if its analogues as provided in Schedule 1(A)(4) of R.S. 40:964.
 

 [[Image here]]
 

 Thus, in order to convict the defendant of possession of 28 grams or more but less than 200 grams of a controlled dangerous substance, to wit, Cocaine, you must find:
 

 1. That the defendant knowingly or intentionally possessed cocaine; and
 

 2. That the amount of cocaine possessed was 28 grams or more but less than 200 grams.
 

 1 inDavis argues that no attempt was made to determine how much cocaine was present in the substance and that he should have been charged with having an indeterminate amount of cocaine.
 

 The failure to read a requested special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right.
 
 [16]
 

 La.C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. To support a conviction for possession of cocaine in violation of LSA-R.S. 40:967(F)(l)(c), the State must present evidence establishing beyond a reasonable doubt that: (1) the defendant was in possession of the drug; (2) the defendant knowingly and intentionally possessed it; and (3) the amount possessed was 400 grams or more of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule 11(A)(4) of R.S. 40:964.
 
 [17]
 
 Although Davis was convicted of a violation of La. R.S. 40:967(F)(l)(a), the elements of the crime are the same, except for the amount of cocaine, or mixture or substance containing a detectable amount of cocaine to be possessed.
 

 The State proved that the substance containing cocaine weighed 60.68 grams. Under the facts of this case, the trial judge stated the applicable law and did not err by refusing to give the amended jury instruction, nor did it err by refusing to allow Davis to make such an argument to the jury.
 

 This assignment of error is without merit.
 

 |„
 
 ERROR PATENT REVIEW
 

 On our error patent review, we note the transcript reflects that, on October 10, 2007, the trial court fined Davis $50,000; however, the commitment is silent with regard to the fine. Second, the transcript reflects that, on October 10, 2007, the State filed a multiple bill alleging Davis to be a fourth felony offender, and Davis
 
 *520
 
 denied those allegations. The commitment does not reflect those actions were taken on that date. Third, the transcript reflects that, on December 11, 2008, the trial judge found Davis to be a fourth felony offender after a hearing; however, the commitment indicates that he pled “guilty” under La. R.S. 15:529.1 on count one. Although Davis stipulated on March 10, 2008, that he was the same individual who pled guilty to the offenses in the multiple bill, he objected to the form and content of his prior guilty pleas. Fourth, the commitments reflect that Davis was charged with “poss/witd cds over 28 grams — cocaine.” However, the bill of information shows that he was charged with possession of cocaine over 28 grams but under 200 grams.
 

 We remand the case and order that the district court amend the commitments/minute entries to conform to the transcript and other parts of the record.
 
 [18]
 

 Further, the trial judge ordered Davis’ enhanced sentence be served without benefit of probation or suspension of sentence. The underlying statute, LSA-R.S. 40:967(G), provides that the imposition of sentence shall not be suspended, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F. La. R.S. 40:967(F)(l)(a) provides that any person who violates that subsection shall be sentenced to seiwe a term of imprisonment at hard labor of not less than five years, nor more than thirty years. 112Therefore, the trial judge erred by not ordering the enhanced sentence to be served without the benefit of parole for at least five years. Accordingly, we vacate Davis’ sentence and remand for re-sentencing in accordance with the underlying statute.
 

 There are no other patent errors requiring correction.
 

 For the foregoing reasons, the conviction is affirmed. The case is remanded to the trial court with instructions to amend the commitments/minute entries and to re-sentence Davis in accordance with this opinion.
 

 AFFIRMED; MULTIPLE OFFENDER SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 .
 
 Teny v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [2]
 

 . La.C.Cr.P. art. 703(D);
 
 State v. Parnell,
 
 07-37 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097,
 
 writ denied,
 
 07-1417 (La.1/7/08), 973 So.2d 733.
 

 [3]
 

 .
 
 State v. Parnell, supra.
 

 [4]
 

 . La.C.Cr.P. art. 215.1;
 
 State v. Gray,
 
 06-298 (La.App. 5 Cir. 10/31/06), 945 So.2d 798, 802,
 
 writ denied,
 
 06-2958 (La.9/14/07), 963 So.2d 993.
 

 [5]
 

 .
 
 Id.
 

 [6]
 

 .
 
 Id.; See also, State v. Savoie,
 
 09-103 (La.App. 5 Cir. 5/12/09) 15 So.3d 207.
 

 [7]
 

 .
 
 State v. Cooper,
 
 43,809 (La.App. 2 Cir.1/14/09), 2 So.3d 1172;
 
 See also, State v. Bellow,
 
 07-824 (La.App. 5 Cir. 3/11/08), 982 So.2d 826.
 

 [8]
 

 .
 
 State v. Leonard,
 
 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764 (citing
 
 Whren v. United Slates,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and
 
 State v. Kalie,
 
 96-2650 (La.9/19/97), 699 So.2d 879).
 

 [9]
 

 .
 
 State v. Waters,
 
 00-0356 (La.3/12/01), 780 So.2d 1053;
 
 State v. Leonard, supra.
 

 [10]
 

 .
 
 State v. Waters, supra.
 

 [11]
 

 . La.C.Cr.P. art. 215.1(B);
 
 State v. Cowart,
 
 03-880 (La.App. 5 Cir. 11/25/03), 862 So.2d 225.
 

 [12]
 

 .
 
 State v. Haywood,
 
 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568 (citing
 
 State v. Huntley,
 
 97-0965 (La.3/13/98), 708 So.2d 1048).
 

 [13]
 

 .
 
 State v. Haywood,
 
 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 577 (citing
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993)).
 

 [14]
 

 .
 
 See, e.g., State v. Broussard,
 
 00-3230 (La.5/24/02), 816 So.2d 1284;
 
 State v. Taylor,
 
 06-558 (La.App. 5 Cir. 7/30/07), 966 So.2d 631, 640,
 
 writ denied,
 
 07-1902 (La.2/1/08), 976 So.2d 717;
 
 State v. Kelley,
 
 08-467 (La.App. 5 Cir. 1/27/09), 8 So.3d 684.
 

 [15]
 

 .
 
 State v. Winfrey,
 
 97-427, p. 23 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 77,
 
 writ denied,
 
 98-0264 (La.6/19/98), 719 So.2d 481.
 

 [16]
 

 .
 
 State v. Winfrey, supra; State v. Smith,
 
 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280,
 
 writ denied,
 
 05-1195 (La.2/3/06), 922 So.2d 1169.
 

 [17]
 

 .
 
 State v. Miller,
 
 06-451 (La.App. 5 Cir. 10/31/06), 945 So.2d 773.
 

 [18]
 

 .
 
 See, State v. Watson,
 
 08-214, p. 13 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 787.