JOHN J. MOLAISON, JR., Judge.
[ 2Pefendant, Arthur C. Lewis, appeals his conviction of possession of cocaine. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On April 23, 2012, Corporal Joseph Amadeo and Sergeant Roy Jacob of the Causeway Police Department stopped defendant, Arthur C. Lewis, after observing him commit numerous traffic violations. The officers attempted to handcuff defendant for safety reasons in order to question him; however, he physically and verbally resisted them and was arrested. A search of defendant’s person yielded a small clear plastic cellophane bag containing crack cocaine.
On May 11, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession of cocaine in violation of LSA-R.S. 40:967C. Defendant was arraigned on June 14, 2012, and pled not guilty. On August 20, 2012, his motion to suppress evidence was denied. Also on that date, 13defendant proceeded to trial, and a six-person jury found him guilty as charged.[1] On August 24, 2012, defendant was sentenced to five years imprisonment at hard labor.[2] Also on that date, defendant filed a timely motion for appeal that was granted.[3]
*133 Immediately after sentencing, the State filed a multiple offender bill of information in open court alleging that defendant was a second felony offender, and defendant denied those allegations. On October 25, 2012, defendant stipulated that he was a second felony offender. The trial judge then sentenced him under the multiple bill statute to eight years imprisonment at hard labor without the benefit of probation or suspension of sentence.

LAW AND DISCUSSION

Defendant’s sole assignment of error on appeal is that the trial judge erred in denying his motion to suppress the evidence. He contends that he was illegally arrested when the police stopped him for a traffic violation and immediately handcuffed him. Defendant asserts that at this point the stop clearly exceeded its constitutional boundaries. He argues that because of the illegal arrest, the subsequent search incident to the arrest was illegal and the evidence retrieved was fruit of the poisonous tree and should be suppressed. Defendant further argues that there was no justification for going into his pocket if he was merely detained. He concludes that because the officers had no legal justification for detaining him, the evidence retrieved as a result should have been suppressed and, therefore, the ruling of the trial judge should be reversed and the conviction overturned.
I/The State responds that the seizure of evidence was lawful on the grounds that the law enforcement officers had the authority to arrest defendant for the traffic violations. Further, it contends that even if this were not the case, after defendant was properly stopped for traffic violations, the police were authorized to conduct a safety frisk on defendant and when defendant resisted, the officers had probable cause for defendant’s arrest. The State adds that the situation would have also warranted a search for a dangerous weapon, and that the use of handcuffs would not have been constitutionally impermissible in this case. It concludes that the trial judge properly denied defendant’s motion to suppress the evidence.
On August 20, 2012, a suppression hearing was held in this matter, and Corporal Joseph Amadeo[4] of the Causeway Police Department was the sole witness. Corporal Amadeo testified that on April 23, 2012, at approximately 7:45 p.m., he was in the area of the west traffic circle of the Huey P. Long Bridge at Bridge City Avenue and Highway 90, speaking to his sergeant, when he and his sergeant observed a small motorcycle committing numerous traffic violations. He explained that the motorcycle did not appear to be “street legal,” and it had no headlights or taillights. Corporal Amadeo noticed the motorcycle was going the wrong way on a one-way street, was crossing the median, and was driving in an area that was a construction zone and was closed to traffic. The motorcycle passed again, committing the same violations, but then disappeared out of their sight. It was agreed that if the motorcycle returned to the area, they would make a stop to learn the individual’s intentions.
The motorcycle was observed again coming down Highway 90, traveling the wrong way, going across the median, and into a construction zone. Based on those observations, a traffic stop was initiated at the 1100 block of Highway 90. The | .^officers exited their police car and told defendant to stop and exit his bike, and defendant complied with those demands. Defendant was wearing a full hooded garment, like a sweatshirt, and a “full face mask.” He was told that he was not under arrest, but would be interviewed regarding *134 his intentions. The officers attempted to place handcuffs on defendant at that point, and defendant began physically resisting those attempts. At some point, the officers handcuffed defendant. They put defendant on the hood of the police car to check for weapons or other possible items, but shortly thereafter, defendant resisted again; so, the search was stopped and continued later on.
Defendant verbally resisted the officers as well. He was screaming and yelling that he knew his rights, he was not going to jail, and he was not getting into the police car. A fairly large crowd of spectators started gathering near the area. The officers tried to put defendant into the police car; however, defendant physically resisted them using his elbows, legs, and shoulders. The officers had the rear door of the police car open, but defendant kicked it closed at least twice, saying he was not getting into the car. Defendant was brought to the ground for his safety because of his continued resistance. Eventually, Corporal Amadeo placed defendant under arrest and conducted a search incident to the arrest. After checking defendant’s pockets, Corporal Amadeo found a pack of cigarettes, a cigarette lighter, a cell phone, and a small clear packet of “what turned out to be drugs.”
On cross-examination at the suppression hearing, Corporal Amadeo explained that defendant was handcuffed for officer safety and for defendant’s own safety, noting that this was a known high crime area and that defendant was | (¡dressed in a full hood and a “full face mask.”[5] He further explained that defendant’s hands were in his pockets prior to when he was handcuffed. Additionally, Corporal Amadeo testified that they searched defendant for weapons and additional contraband before putting him into the police car.
After hearing the testimony, the trial judge denied defendant’s motion to suppress the evidence.
At trial, additional facts were elicited. Corporal Amadeo testified at trial that defendant continued to place his hands into his pocket as they questioned him. He also testified that he initially observed a large bulge in defendant’s right front pants pocket, and since he did not know if that was a weapon, they patted defendant down to see if he was armed and removed the items that were in that pants pocket. The corporal explained that he was able to complete the search of defendant’s person following defendant’s arrest, during which he retrieved a small clear plastic cellophane bag containing crack cocaine from defendant’s right front pants pocket. It was stipulated that this substance was analyzed and confirmed to contain crack cocaine with a net weight of 1.39 grams.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703D. The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Ayche, 07-753, p. 6 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148, writs denied, 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a review *135 ing court 17owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. State v. Wells, 08-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580.
Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court’s pretrial ruling on a motion to suppress. State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); Ayche, 07-753, at 5-6, 978 So.2d at 1148.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Leonard, 06-361, p. 4 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 765. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. State v. Nicholas, 06-903, p. 6 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. Warrantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Leonard, 06-361 at 4, 945 So.2d at 765.
The first issue is whether the officers had reasonable suspicion to conduct a traffic stop.
The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by State and federal jurisprudence. Leonard, 06-361 at 4, 945 So.2d at 766. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. Ayche, supra at 6-7, 978 So.2d at 1148. “Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. State v. Davis, 09-452, p. 5 (La.App. 5 Cir. 1/26/10), 31 So.3d 513, 516, writ denied, 10-2201 (La.10/21/11), 73 So.3d 373. Additionally, a violation of a traffic regulation provides reasonable suspicion to stop a vehicle. Id. Generally, the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred. State v. Waters, 00-0356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056. The fact that an officer does not issue a traffic citation is irrelevant to the constitutionality of the stop. State v. Martin, 11-160, p. 12 (La.App. 5 Cir. 12/28/11), 83 So.3d 230, 238.
Police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances. Davis, 09-452 at 6, 31 So.3d at 517. Generally, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred, and the standard is purely objective, without taking into consideration the subjective beliefs or expectations of the detaining officer. Id. “ ‘Although they may serve, and may often *136 appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.’ ” Id. (quoting Waters, supra).
|3In the instant case, the officers observed defendant committing various traffic violations, including riding without headlights or taillights, traveling the wrong way on a one-way street, crossing medians, and riding in a closed construction zone.[6] As such, we find that the officers were justified in stopping defendant for the traffic violations.
The second issue is whether the officers were justified in handcuffing defendant, and whether those actions rose to the level of an arrest.
Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. State v. Morton, 08-164, p. 7 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 657. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. Morton, 08-164 at 7-8, 993 So.2d at 657. However, arrest-like features such as the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. Id.
Therefore, when the State seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. Morton, 08-164 at 8, 993 So.2d at 657. Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terry stop. Id. “[A]n officer’s handcuffing a suspect is a reasonable method of |inensuring officer safety.” State v. Jones, 11-8, p. 11 (La.App. 5 Cir. 11/15/11), 78 So.3d 274, 282, writ denied, 11-2781 (La.4/13/12), 85 So.3d 1246.
In the instant case, it does not appear that the officers had the intent to impose an extended restraint on defendant’s liberty, since they told defendant that he was not under arrest, but was being detained for questioning. Additionally, the stop occurred in a high crime area[7] at approximately 7:45 p.m. Defendant was dressed in a suspicious manner, which included a “full face mask,” and he was putting his hands in his pocket. Corporal Amadeo testified that he did not know if defendant was armed, and Sergeant Roy Jacob testified at trial that defendant was a “pretty big fellow.” At some point, the officers noticed the large bulge in defendant’s front pants pocket. In light of the circumstances, we find that the officers were justified in handcuffing defendant as a safety precaution, and that those actions did not rise to the level of an arrest.
The third issue is whether the officers were justified in conducting a pat-down search of defendant for weapons.
*137 An officer conducting a traffic stop may perform a pat-down search of a driver and passengers upon reasonable suspicion that they may be armed and dangerous. State v. Brovm, 09-209, p. 5 (La.App. 5 Cir. 12/29/09), 30 So.3d 907, 911. Such a search “must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.” Id. (quotation omitted). This limited protective search is justified under circumstances where a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Brown, 09-209 at 5-6, 30 So.3d at 911. “[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticular-ized | ^suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Brown, 09-209 at 6, 30 So.3d at 911.[8] If a law enforcement officer has legally stopped a person pursuant to LSA-C.Cr.P. art. 215.1A, the officer may frisk the outer clothing of the person if the officer reasonably suspects that he is in danger. LSA-C.Cr.P. art. 215.1B. Additionally, if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. Id.
Louisiana jurisprudence has recognized that there is potential danger for an officer even during a routine traffic stop. State v. Brown, 09-209, p. 6 (La. App. 5 Cir. 12/29/09), 30 So.3d 907, 911 (citing State v. Landry, 588 So.2d 345, 347 (La.1991)). A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle. Landry, 588 So.2d at 347.
In the instant case, we find that the officers were justified in conducting a pat-down weapons search of defendant for weapons for the same reasons that we find the officers were justified in their decision to handcuff defendant.
The next issue is whether there was probable cause to arrest defendant for resisting the officers when he was being lawfully detained.
Under LSA-R.S. 14:108A, it is a criminal offense for a person being lawfully detained by an officer to resist that detention.[9] LSA-R.S. 14:108.2A defines the crime of resisting a police officer with force or violence.
In State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.3d 826, this Court found that the warrantless search of defendant and seizure of narcotics, incident to a lawful arrest of the defendant for resisting an officer, was legal. Also, in State v. Jenkins, 10-1471, 2011 WL 1103319, at *6 (La.App. 1 Cir. 3/25/11) (unpublished opinion) [10], writ denied, 11-0857 (La.11/4/11), *138 75 So.3d 921, the First Circuit found that the detective had reasonable suspicion to make an investigatory stop, and when the defendant refused to comply with the detective’s command to stop, thwarting his attempt to investigate further, the defendant committed the criminal offense of resisting arrest.
In the' instant case, we find that there was probable cause to arrest defendant for resisting the officers when he was being lawfully detained. Evidence was presented that defendant physically resisted the officers attempts to handcuff him and pat him down. He resisted with his shoulders, elbows, legs, and other parts of his body. Also, trial testimony indicated that defendant pushed back during the pat-down and hit Sergeant Jacobs in his chest.[11]
The final issue is whether the officers were justified in searching defendant’s person and retrieving the cocaine from his pocket.
A search incident to an arrest is an exception to the warrant requirement. This exception holds that, once a lawful arrest has been made, a warrantless search of the arrestee’s person and of the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed. State v. Wilford, 11-256, pp. 8-9 (La.App. 5 Cir. 12/13/11), 81 So.3d 868, 875.
113In the instant case, the testimony presented at the suppression hearing did not set forth a clear chronological sequence of when the marijuana and cocaine were discovered; however, the trial testimony indicated that the cocaine was found after defendant was arrested. In any event, as was discussed previously, we find that the officers had probable cause to arrest defendant for resisting the lawful detention. We further find that the search of defendant’s person incident to the arrest was justified as an exception to the warrant requirement and, therefore, the seizure of the cocaine from his pocket was lawful. “It is well established searches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search.” “Naturally, the fruits of the search cannot be necessary to support the probable cause to arrest.... If an arrest is justified before the search, it is not unreasonable for the search to be made before instead of after the arrest.” State v. Sherman, 05-0779, pp. 8-9 (La.4/4/06), 931 So.2d 286, 292.
This assignment of error is without merit.

ERRORS PATENT REVIEW

Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request. The review reveals no errors patent in connection with this appeal.

DECREE

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED

. Defendant filed several pre-trial motions; however, the record does not include rulings on all of them. Nevertheless, when a defendant does not object to the trial court’s failure to rule on a motion prior to trial, the motion is considered waived. See State v. Wise, 05-221, p. 7 (La.App. 5 Cir. 10/6/05), 916 So.2d 290, 293.

. Defendant was also charged with various traffic-related offenses and was found guilty by the judge after a bench trial of having no headlamps and no brake lights, and driving the wrong way against oncoming traffic. Additionally, he was found guilty of resisting an officer and possession of marijuana. However, those matters are not part of this appeal.

.The motion for appeal seeks relief from the verdict rendered on April 20, 2012, and the sentence imposed on April 24, 2012. It appears that this is a mistake. The verdict in this case was rendered on August 20, 2012, and the sentence was imposed on August 24, 2012.

. At the time of the suppression hearing, Offl-cer Amadeo was ranked as a "Corporal.”

. The patrol unit was equipped with a video camera that was able to record the audio. However, it appears that the officers and defendant were outside of the camera’s view. It does not appear that the tape was introduced into evidence, and it is not included as an exhibit to this record.

. Defendant was found guilty by the trial judge of lack of headlamps, lack of brake lights, and driving the wrong way against oncoming traffic.

. At trial, testimony was presented regarding the officer's knowledge of drugs in the area. Guns and drugs frequently go hand-in-hand. State v. Warren, 05-2248, p. 18 (La.2/22/07), 949 So.2d 1215, 1229.

. At trial, it was established that Corporal Amadeo had been with the Causeway Police Department for about four and one-half years and Sergeant Jacob had been with the department for almost twenty years.

. LSA-R.S. 14:108A provides that resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of propertyf.]

.It is noted that this case is published on the First Circuit’s website and, therefore, may be cited as authority despite the fact it is not designated for publication. See State in the Interest of S.L., 11-883, p. 2 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 827 n. 2; LSA-C.C.P. art. 2168.

. Defendant was also found guilty by the trial judge of resisting an officer. The arrest report reflects the following charges: resisting an officer (in violation of LSA-R.S. 14:108.2), battery of a police officer, possession of marijuana, and possession of cocaine.