STEPHEN J. WINDHORST, Judge.
|2Pefendant, Louis K. Cole, was convicted of possession of cocaine in violation of La. R.S. 40:967C, and in due course, was sentenced as a second felony offender to eight years imprisonment at hard labor, to be served without benefit of probation or suspension of sentence.[1] Defendant now appeals from his conviction and sentence, alleging that the trial court erred in denying his motion to suppress evidence, and that the trial court erred in failing to grant a mistrial after prejudicial remarks by a potential juror. We affirm defendant’s conviction and sentence.
The following facts were developed at trial. On October 19, 2012, approximately 4:00 P.M., Detective Randy Picarella of the Jefferson Parish Sheriffs Office was canvassing on Highway 90 near the Bee-chgrove area. He executed a traffic stop after observing a vehicle fail to signal before making a left turn. Sergeant Shane Klein of the Jefferson Parish Sheriffs Office stopped behind Detective Picarella’s vehicle, and Detective Donald Clogher of the Jefferson Parish |sSheriffs Office stopped in front of the vehicle that was pulled over. Defendant was the driver of the vehicle that was stopped. There was also a female passenger in the vehicle.
Sergeant Klein approached the driver’s side of the vehicle, while Detectives Clo-gher and Picarella approached the passen *935 ger side. Detective Clogher approached from the front of the vehicle and noticed the driver bend over to his right after his hands went out of sight. Detective Clo-gher warned Sergeant Klein about the driver’s hand movements and his reaching down toward the floorboard. Because of Detective Clogher’s warning that defendant had made movements suggesting the possibility of a gun, Sergeant Klein requested that defendant exit the vehicle so that a pat-down search for officer safety could be performed.
After Sergeant Klein requested that defendant put his hands on the car so he could conduct a pat-down search, defendant began nudging him with his elbows and became very agitated, saying he did not have “anything.” Sergeant Klein asked defendant to let him do his job. Although defendant put his hands back on the car, once Sergeant Klein attempted to reach into the front of defendant’s waistband, he “aggressively pushed off the car” and pushed Sergeant Klein, causing Klein to almost lose his balance. Sergeant Klein explained to defendant he needed to pat him down for safety reasons, but defendant refused. At trial, Sergeant Klein testified that defendant knew they were police officers when he was attempting the pat-down search.
Sergeant Klein eventually handcuffed defendant, placed him under arrest, and then attempted to complete the pat-down for officer safety, however defendant continued refusing to let them check him for weapons. Defendant was wearing baggy pants that were “below his buttocks” and were falling down to his ankles as Sergeant Klein tried to gain control of him.
I ¿Because of defendant’s lack of compliance, and because his actions were “escalating,” Detective Clogher assisted Sergeant Klein in completing the pat-down search. Detective Clogher reached in the front of defendant’s waistband, an area that defendant seemed uncomfortable with having searched.[2] While defendant’s pants were separated from his boxer shorts, Detective Clogher felt what he believed to be some type of narcotics in his boxer shorts. Detective Clogher removed crack cocaine from a slit that had been cut into defendant’s boxer shorts. Later tests showed the crack cocaine had a gross weight of two grams. No weapon was recovered from defendant’s person.
The third police officer on the scene, Detective Picarella, testified that defendant was belligerent, “moving about,” loud, resisting the search, and saying that he did not have anything on him. Detective Pi-carella further testified that typically there were no problems with pat-downs for weapons “unless there’s something up.”

Assignment of Error One

In his first assignment of error, defendant alleges that the trial court erred in denying his pretrial motion to suppress, in which he contended that the evidence was seized after an illegal stop and search.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703D; State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128. The trial court’s decision to deny a motion to suppress is afforded great weight and | (¡will not be set aside unless the preponderance of the evidence clearly favors suppression. Lewis, supra. When a trial *936 court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. Id.
Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court’s pre-trial ruling on a motion to suppress. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
At the hearing on defendant’s motion to suppress, Sergeant Shane Klein and Detective Donald Clogher testified that on October 19, 2012, they participated in an investigation that led to defendant’s arrest. Detective Clogher explained that information was received from a confidential informant (Cl), who had proven to be reliable in the past, regarding distribution of crack cocaine in the Beechgrove and Avondale areas. Thereafter, several officers in separate vehicles attempted to track down a vehicle that the suspect was allegedly driving, since the Cl had provided a specific license plate number of the vehicle.
Detective Picarella conducted an investigatory stop after the vehicle defendant was driving, bearing a license plate number that was one digit off from the information the Cl had provided, was pulled over for a traffic violation. Detective Clo-gher and Sergeant Klein were advised of the traffic violation by means of the radio and they proceeded to the scene of the stop. After the vehicle was stopped, Detective Clogher approached from the front of the vehicle. Other police personnel approached from different directions. At the hearing, Detective | (¡Clogher explained that there was less likelihood of a confrontation with a stop initiated as a traffic stop.
As Detective Clogher approached, he observed defendant quickly move his hands from the steering wheel out of sight and lean over towards the center of the car, almost to the floorboard. Detective Clogher advised Sergeant Klein of defendant’s actions and warned him to watch the driver’s hands as he approached the driver’s side of the vehicle. Detective Clo-gher stated that he thought that weapons may be on defendant’s person or in the vehicle and he was concerned about officer safety. After being alerted, Sergeant Klein ordered defendant to exit the vehicle and initiated a pat-down of defendant for weapons. Defendant appeared nervous, was moving his body, and refused to allow the pat-down to continue. Defendant became agitated and started pushing away from Klein. Sergeant Klein told defendant to stop, but he kept saying, “I don’t have anything on me.” Defendant refused to allow Klein to complete the pat-down. Detective Clogher assisted in the pat-down because defendant was resisting and struggling with Sergeant Klein. Defendant repeatedly told the officers to take him to jail and became “more confrontational.”
After being warned several times to allow Sergeant Klein to complete the pat-down, defendant was ultimately handcuffed and placed under arrest for resisting the pat-down. Defendant was searched after the arrest for resisting an officer and a little less than three grams of crack cocaine was discovered in a “front slit, like, a compartment cut into the front flap of his boxer shorts.” At the hearing, Detective Clogher explained that the closer they got to the location of the crack cocaine, the more defendant resisted. He also explained that the pat-down became a search. Defendant was then also arrested for possession of crack cocaine. There *937 was no citation issued for the traffic violation.
|7The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. Lewis, supra. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Id. Warrantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Id.
We first consider whether the officers were justified in conducting a traffic stop. The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by La.C.Cr.P. art. 215.1, as well as by State and federal jurisprudence. Lewis, supra at 135. The Terry[3] standard, as codified in La.C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. Id. “Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. Additionally, a violation of a traffic regulation provides reasonable suspicion to stop a vehicle. Id. Generally, the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred. The fact that an officer does not issue a traffic citation is irrelevant to the constitutionality of the stop. Id.
| ^Police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances. Generally, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred, and the standard is purely objective, without taking into consideration the subjective beliefs or expectations of the detaining officer. Lewis, supra. “ ‘Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.’ ” Id. (quotations omitted). “When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer’s subjective motivation.” State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 753.
Defendant was stopped after he failed to use his turn signal. Failure to use a turn signal is a traffic violation. See La. R.S. 32:104B;[4] State v. Turner, 12-855 (La.App. 5 Cir. 5/16/13), 118 So.3d 1186, 1191. Thus, the officers were justified in stopping the vehicle for a traffic violation, even if the stop was a pretext to *938 investígate for controlled dangerous substances. State v. Davis, 09-452 (La.App. 5 Cir. 1/26/10), 31 So.3d 513, writ denied 10-2201 (La. 10/21/11). 73 So.3d 373.
Moreover, as noted above, detectives were acting on probable cause derived from information obtained from a Cl whose information had been reliable in the past. Therefore, the stop itself would have been constitutional without the basis of a traffic violation, no less so than had officers with probable cause approached defendant on the sidewalk. Inasmuch as Detective Clogher testified that there was less likelihood of a confrontation with a stop initiated as a traffic stop, it appears |9that the traffic stop may have been less pretextual and more for the purpose and hope of maintaining calm.
We next conclude that the officers were justified in ordering defendant out of the vehicle to conduct a pat-down of his person. Police officers should not be required to take unnecessary risks in performing their duties. They are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terry stop. Lewis, supra at 136. Louisiana jurisprudence has recognized that there is potential danger for an officer even during a routine traffic stop. Id. at 137. A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle. Id.
Once an officer has lawfully stopped a vehicle for a traffic violation, he is authorized to order the driver out of the vehicle pending completion of the stop. State v. Kinard, 12-446 (La.App. 5 Cir. 11/27/12), 105 So.3d 974, 979.
Further, an officer conducting a traffic stop may perform a pat-down search of a driver and passengers upon reasonable suspicion that they may be armed and dangerous. Lewis, supra at 137. Such a search “must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.” Id. (quotation omitted). This limited protective search is justified under circumstances where a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Id. “[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticular-ized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled | into draw from the facts in light of his experience.” Id. (quotation omitted). If a law enforcement officer has legally stopped a person pursuant to La.C.Cr.P. art. 215.1A, the officer may frisk the outer clothing of the person if the officer reasonably suspects that he is in danger. Id. (citing La.C.Cr.P. art. 215.1B). Additionally, if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. Id.
Here, the officers had received information from a reliable Cl regarding crack cocaine. “Guns and drugs frequently go hand-in-hand[.]” State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215, 1229. Further, upon Detective Clogher’s approach, he observed movements by defendant that led him to believe that defendant could have a weapon. For safety reasons, he advised Sergeant Klein about his observations and warned him as he approached the driver. Thus, the officers were justi- *939 fled in conducting a pat-down search for weapons.
Third, we find probable cause to arrest defendant for resisting an officer. Under La. R.S. 14:108A, it is a criminal offense for a person being lawfully detained by an officer to resist that detention.[5]
We find probable cause to arrest defendant for resisting the officer when he was being lawfully detained and Sergeant Klein was attempting to complete a pat-down search of weapons for officer safety. Evidence was presented that defendant physically resisted the officer’s attempts to pat him down, even pushing Sergeant Klein to the point where he almost lost his balance.
Finally, the officers were justified in searching defendant’s person and retrieving the crack cocaine from his boxer shorts. A search incident to an arrest is an exception to the warrant requirement. This exception holds that, once a lawful Inarrest has been made, a warrantless search of the arrestee’s person and of the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed. Lewis, supra at 138.
In the instant case, the testimony presented at the suppression hearing indicates that defendant was arrested for resisting an officer after defendant physically resisted the pat-down search for weapons when the officer repeatedly told him to let him do his job and complete the pat-down. After the arrest, the search of defendant’s person was justified as an exception to the warrant requirement and, therefore, the seizure of the cocaine from defendant’s boxer shorts was lawful. See State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.3d 826, wherein this Court found that the war-rantless search of defendant and seizure of narcotics, incident to a lawful arrest of the defendant for resisting an officer, was legal.
We find that the trial court did not err in denying defendant’s motion to suppress. This assignment of error is without merit.

Assignment of Error Two

In his second assignment of error, defendant argues that the trial court erred when it denied defense counsel’s motion for a mistrial and to release the jury panel due to highly inflammatory remarks and references to racial prejudices, made by a potential juror, a mistake compounded when the court allowed her to speak and more prejudicial remarks were presented to the potential jurors. Defendant argues that her conduct tainted the jurors and made it impossible for him to have a fair and impartial jury.
La.C.Cr.P. art. 775 provides in part that “[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain |12a fair trial, or when authorized by Article 770 or 771.” Under La.C.Cr.P. art. 770(1), a mistrial shall be ordered when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official during trial or argument refers directly or indirectly to race, if such remark or comment is not material and *940 relevant and might create prejudice against the defendant in the jury’s mind. An admonition to the jury to disregard the remark shall not be sufficient to prevent a mistrial, but if the defendant requests that only an admonition be given the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In the present case, the alleged prejudicial comments were not made by the judge, district attorney, or court official, but by a prospective juror. Consequently, we find that the requirements for a mandatory mistrial under Article 770 were not triggered. See State v. Pennington, 12-0804, 2013 WL 596151 (La.App. 1 Cir. 2/15/13) (not designated for publication).
Rather, the controlling provision in this case appears to be La.C.Cr.P. art. 771, which sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under Article 770. Article 771 provides, in pertinent part, the following:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant ... in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official!.]
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
11SA mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Alexander, 12-807 (La.App. 5 Cir. 5/16/13), 118 So.3d 1138. An appellate court shall not reverse a ruling because of any error which does not affect the substantial rights of the accused. La.C.Cr.P. art. 921.
During voir dire, Jenette Porter was examined as a prospective juror. During the examination, she expressed that her home had been broken into and she blamed this on law enforcement. However, she believed that she could still be a fair and impartial juror. She also expressed that she would rather be at work than in court. Further, she said that she thought this was “a racial state outside of New Orleans.” She also said the following:
So like me or not. He committed a crime. You want someone to help you get him off the street or whatever. Put your burden of proof or your white talk. Continue. Ain’t going to pay my bills.... It’s a black state they say. But percentage of blacks going to be criminal. So he’s a criminal, as you would say, or his lawyer would say not. Proceed.
After this examination, a bench conference was held. Defense counsel requested a mistrial because counsel believed that the prospective juror said repeatedly that defendant was black, was a criminal, and was guilty of a crime. Counsel concluded *941 this was a cause challenge. The State expressed that it had no problem “causing her out.” The court provided that it was willing to strike this prospective juror for cause. Defense counsel then stated that he believed she had tainted the entire jury panel by saying he was black and guilty of a crime. Counsel suggested that if the mistrial would not be granted that the court should at least 114instruct the panel that defendant, as he sits there, is not guilty. Thereafter, the court instructed the prospective jurors, as follows:
Some comments have been made by one of the prospective jurors, and I just want to give you an instruction to be sure that there’s no problem.
As the Defendant sits here today, he is not guilty. The burden is upon the State to prove that he is guilty of a crime beyond a reasonable doubt. As he sits here right now, there is a presumption of innocence. Okay? And I want you to disregard the comments of Ms. Porter.
Later, Ms. Porter asked to speak and denied that she said defendant was guilty, noting that a person is innocent until proven guilty. After further comments were made, the trial judge instructed her to stop and threatened her with contempt until she was escorted outside of the courtroom. The State then continued examining prospective jurors, noting that defendant was innocent until proven guilty and explained the State’s burden. Ms. Porter was ultimately excused for cause.[6]
There was no showing that Ms. Porter’s comments affected the other prospective jurors, nor was there a showing of any prejudice tending to deprive the defendant of the reasonable expectation of a fair trial. The jury was instructed to disregard her comments and was reminded more than once of defendant’s presumption of innocence. Even Ms. Porter ultimately said defendant was innocent until proven guilty. We do not believe that Ms. Porter’s conduct made it impossible for defendant to obtain a fair trial. Compare State v. Scroggins, 40,746 (La.App. 2 Cir. 3/22/06), 926 So.2d 64, 69-71, writ denied, 06-0980 (La.11/3/06), 940 So.2d 655.
We therefore find that the trial court did not abuse its discretion in denying the motion for mistrial, and the admonishment, which was suggested by the | ^defense, was sufficient under the circumstances of this case. This assignment of error has no merit.
We have reviewed the record for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which merits our attention.
The commitment reflects that defendant’s sentence and enhanced sentence were imposed to run concurrently with the sentence imposed in case number 12-6015 and with “any other sentence currently serving.” The transcript of the original sentencing provides that defendant’s misdemeanor sentence in case number 12-6015 was ordered to run concurrently with the original sentence in this case. The transcript of the enhanced sentencing likewise provides that the eight-year enhanced sentence was ordered to run concurrently with the sentence in case number 12-6015. The transcript does not reflect that the sentences were imposed to run concurrent *942 ly with “any other sentence” defendant was “currently serving,” as was provided for in the commitment. Generally, the transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983).
We remand the matter for correction of the commitment, and further direct the district court to make the entries in the commitment reflecting that the enhanced eight-year sentence runs concurrently with case number 12-6015, and we direct the Clerk of Court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See La.C.Cr.P. art. 892B(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam), and also to the Department of Corrections’ Legal Department.
| ,,We also note that the “State of Louisiana Uniform Commitment Order,” which is included in the record, does not reflect that the sentence was imposed without benefit of probation or suspension of sentence, as reflected in the record. We therefore remand this case for correction of the Uniform Commitment Order. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
We find no other error which merits correction.
For the above discussed reasons, the defendant’s conviction and sentence are affirmed. The case is remanded for action consistent with this opinion.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED

. At trial, the court simultaneously found defendant guilty of "resisting,” a misdemeanor, in cáse number 12-6015. Defendant was sentenced to six months in parish prison, concurrent with the sentence in this case.

. Detective Clogher was asked if this area was consistent with the location where he had observed defendant reaching when he approached the vehicle. Detective Clogher agreed that it was, and testified that he was uncomfortable with having this area searched. He also agreed that a cell phone could have possibly been on his lap.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. La. R.S. 32:104B provides the following: "Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.”

. La. R.S. 14:108A provides that resisting an officer is “the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property ... when the offender knows or has reason to know that the person ... is acting in his official capacity.”

. Ms. Porter was brought back into the courtroom. The court noted that it had learned that even more egregious behavior may have continued in the hall after she left the courtroom and that based on this behavior she would have to return to court for a contempt of court hearing.