DENNIS R. BAGNERIS, SR., Judge.
| defendant, Dorian W. Williams, appeals a trial court judgment, which denied his motion to suppress evidence. For the following reasons, we hereby affirm defendant’s conviction and sentence.
PROCEDURAL HISTORY AND FACTS
On December B, 2008, the State filed a bill of information charging the defendant with possession with intent to distribute marijuana. On February 6, 2009 he pleaded not guilty. After pretrial motions were filed, a hearing was held whereby the trial court, on April 19, 2010, found probable cause and denied defendant’s motion to suppress the evidence. According to the docket master and minute entry, on August 2, 2010 the defendant pleaded guilty as charged under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). According to the Boykin transcript, he pleaded guilty under State v. Crosby, 338 So.2d 584 (1976), preserving his right to seek review of any adverse pretrial ruling on appeal.[1] On 12September 10, 2010, the defendant was sentenced to five years at hard labor.[2] On October 8, 2010, the defendant filed his motion for appeal, which the court granted. The trial court granted the defendant’s motion for bail pending appeal. According to the April 11, 2011 minute entry, the defendant presented a note of evidence (tape and analysis of tape) as part of the record for appeal purposes. On June 9, 2011 this Court vacated the defendant’s appeal, 2012-KA-0221, remanded the matter for the sole purpose of filing a note of evidence within ten days of the date of that order, and upon the filing of the note of evidence in the district court, the defendant was to be granted a new motion for appeal with a return date set by the district court. Defendant now appeals this final judgment.
At the hearing on the motion to suppress, Sgt. Kevin Imbraguglio testified that on October 25, 2008, he was assigned to the Seventh District Narcotics Division. The sergeant testified that he had received information from a concerned citizen that a subject would be on Chef Highway driving a red F-150 about seven in the morning transporting a large amount of marijuana. Sgt. Imbraguglio said that he set up surveillance at around 6:00 a.m. on Chef Highway and observed “the red F-150 traveling down Chef Highway at a high rate of speed going eastbound.” The sergeant stated that the driver of the F-150 turned onto Lane Street without using a turn signal.[3] He said that the truck turned onto Lane Street, and the driver (the defendant) was not wearing a seatbelt. The sergeant decided to make a traffic *294 stop, and he pulled over the truck in the 4500 block of Lane Street. Sgt. | ¡¡Imbraguglio stated: “As I approached the vehicle to get his information, his driver’s license, insurance, etc., I smelled the odor of marijuana coming from the vehicle. I ran the subject’s name and found out he had a prior narcotics arrest. I then contacted K-9 narcotics dog to assist the investigation.” The sergeant indicated that the dog alerted on the exterior of the truck and inside on a “large black bag in the back of the vehicle. A duffel bag type bag [sic].” The sergeant stated that the black bag contained five large packages. A field test on each package was positive for marijuana. The sergeant seized fifty-seven and one-half pounds of marijuana and around $650.00, which was found inside the vehicle. The defendant was given a receipt for the cash. Sgt. Imbraguglio said that he arrested the driver, later identified as Dorian Williams, and advised him of his rights. According to the sergeant, the defendant agreed to cooperate, signed the waiver of rights form, and gave a written statement. The sergeant read the purported statement: “I was stopped today on a routine traffic stop and got caught with marijuana. I got caught with 52 [actually 57.5] pounds ... of weed and 3,650 dollars [actually $650].” The sergeant then transported the marijuana to the evidence room, and the currency went to asset forfeiture.
On cross-examination defense counsel asked if any National Guard officers were present when the F-150 truck was stopped, and the sergeant replied: “When I pulled the subject over and radioed my location, I believe national guard [sic] showed up and assisted.” Counsel asked: “They weren’t already there and they didn’t have the defendant already stopped?” Sgt. Imbraguglio replied: “No, no. No.” The sergeant did not know which National Guard officers were there; two to five units were assigned to the Seventh District every day after Hurricane Katrina. |4He said that he opened the black bag on the back seat after the dog alerted on the bag; the marijuana was wrapped in plastic.
The record has been reviewed, and no error patent has been found.

ASSIGNMENT OF ERROR NUMBER 1

The defendant argues that the trial court erred by denying his motion to suppress the evidence. Appellate counsel makes no argument as to whether the traffic stop was proper, whether Sgt. Im-braguglio had probable cause to search the red F-150 truck, and whether the defendant’s arrest was legal. Appellate counsel focuses on a note of evidence, which was taken on May 9, 2012, years after the hearing on the motion to suppress, as well as the defendant’s guilty plea and sentencing. At the end of the suppression hearing on December 22, 2009, counsel said that he wanted “to see if’ he “can get any additional information.” Counsel claims that the defendant is being permitted to supplement the record with a note of evidence (because at the pertinent time the defense only had a “police radio broadcast, [sic] of poor quality, but nevertheless possibly raising doubts as to the theory of the case of the State.”) However, appellate counsel does not mention the defendant’s first appeal (2011-KA-221), which was dismissed by this Court on June 9, 2011 to remand the case to allow the defendant to file the note of evidence (a tape) into the district court record. Counsel never appeared in court and had the tape entered into the record.
When the defendant filed his second motion for appeal on June 24, 2011, which was granted in August 2011, the tape had not been made part of the record. When appellate counsel filed the defendant’s brief, *295 a new note of evidence consisting of Bel-ford Quillens’ testimony taken on May 9, 2012 is at issue. Counsel argues that in light of the new evidence, the case should be remanded for | Bthe trial court to reconsider its ruling. Counsel asks this Court to give the defendant five days in which to supplement the record with the May 9, 2012 transcript. The brief was filed on May 10, 2012, and the 2012 note of evidence has not been made part of the record.
Counsel acknowledges that the testimony on May 9, 2012 had “a different content that [sic] originally intended.”[4] Counsel claims that Belford Quillens, the person who testified on May 9, 2012 for the note of evidence, lived across the street from the location where the red F-150 truck was stopped in 2008. Counsel alleges that Mr. Quillens testified that he was positive that National Guardsmen made the stop and that an NOPD officer (presumably Sgt. Imbraguglio) arrived later. Counsel argues that Mr. Quillens’ information “negates much of the State’s case, [sic] and renders the arresting officer unworthy of belief....” However, at the December 2009 hearing on the motions, on cross-examination Sgt. Imbraguglio testified that National Guardsmen were at the location of the stop (after he broadcast the information over the radio).
Regardless, if counsel accurately described Mr. Quillens’ testimony, that evidence does not contradict the sergeant’s testimony. Sgt. Imbraguglio smelled the marijuana emanating from the truck after a legal traffic stop, and that justified a search of the vehicle, not to mention the narcotics dog alerting on the truck and the black bag inside. The information in Mr. Quillens’ testimony, which was not before the trial court when it denied the motion to suppress the evidence on December 22, 2009 and is not part of the appeal record, cannot be considered by this Court.
|fiIn its brief the State argues that Sgt. Imbraguglio’s stop for a traffic violation was legal; the search of the truck was justified; and the arrest of the defendant was legal.[5] As to the defense note of evidence, the State claims that appellate counsel does not offer an explanation as to why Belford Quillens or the National Guardsmen, who allegedly stopped the truck, were not subpoenaed and did not testify at the hearing on the motions on December 22, 2009. The State argues that Mr. Quillens’ statement does not really contradict Sgt. Imbraguglio’s version in which National Guardsmen were present at the location of the stop.
A traffic violation can provide reasonable cause to stop a vehicle. State v. Thomas, 99-2219, pp. 8-9 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, 1110; State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326-27. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Sgt. Imbraguglio stopped the defendant because he turned onto Lane without using a turn signal and he was not wearing a seatbelt. The traffic stop was legal, and then Sgt. Imbraguglio smelled the odor of marijuana as he approached the truck that he stopped. The fact that the sergeant smelled marijuana provided probable cause to search the vehicle. State v. Wyatt, 99-2221 pp. 3-4 (La.App. 4 Cir. 9/27/00), 775 So.2d 481, 483-84, and the *296 eases discussed therein. Sgt. Imbraguglio did not search the red F-150 at that point, but called in a narcotics dog, which alerted on the truck and the black bag inside the truck. At that point the sergeant clearly had probable cause to search the truck, and the marijuana and currency were properly seized. The defendant’s assignment of error lacks merit.
^Accordingly, we hereby affirm the defendant’s conviction (guilty plea) and sentence.
AFFIRMED

. At the Boykin hearing, defense counsel noted that continuances had been granted in order for the defense to obtain tape(s) from the Seventh District. Counsel stated that a subpoena duces tecum was filed the week before. The subpoena sought all radio communication tapes on October 25, 2008 from 6:00 a.m. to 8:00 a.m. under item # J-30467.

. At the sentencing a "Lieutenant Jackson” did not appear. The trial court stated: "I’m going to sentence him today. If you can get him here whenever, you can take a note of evidence at that time.” There is no clarification as to the lieutenant’s relationship to this case.

.The transcript does not include /'without” before "using a turn signal”; however, that appears to be a typographical error. Defense counsel and the State claim that Sgt. Imbra-guglio testified that the driver turned onto Lane without using a turn signal, and the gist of Sgt. Imbraguglio's report indicates that the defendant did not use a turn signal.

. It is not clear what counsel meant by that statement.

. In the State’s brief in the statement of the facts, the defendant's last name, Williams, is properly used. In the discussion of the assignment of error, the ADA uses defense counsel's last name, Harris, by mistake.