STATE OF LOUISIANA      \*      NO. 2024-K-0610

VERSUS      \*

     **COURT OF APPEAL**

ISAIAH TORREGANO ET AL.      \*

     **FOURTH CIRCUIT**

     \*

     **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 560-253, SECTION "SECTION L"
Judge Angel Harris
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase)


Jason R. Williams
District Attorney
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119

     COUNSEL FOR STATE OF LOUISIANA/RELATOR


Jonathan Delman
Orleans Public Defenders
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

Eric Malveau
3110 Canal Street
New Orleans, LA 70119

R. Judson Mitchell, Jr., Supervising Attorney
Margaret Hallauer, Student Practitioner
Loyola Law Clinic

540 Broadway Street
New Orleans, LA 70118

Barry S. Ranshi
4224 Florida Avenue, Suite 6
Kenner, LA 70065

Tanzanika Ruffin
4000 Bienville Street, Suite 6
New Orleans, LA 70119

       COUNSEL FOR DEFENDANTS/RESPONDENTS

**WRIT GRANTED;
REVERSED**

**DECEMBER 17, 2024**

This is a criminal case. Relator, the State of Louisiana ("State"), seeks review of the district court's August 9, 2024 ruling suppressing evidence seized during a traffic stop and finding of no probable cause to support several charges. For the reasons set forth below, we grant the State's writ and reverse the district court's ruling.

## FACTS AND PROCEDURAL HISTORY

On July 10, 2023, Louisiana State Police Troopers Henry Kirsch and Jean-Fritz Cadet were conducting proactive patrols in New Orleans as part of Operation Golden Eagle, a multi-agency task force addressing violent crime in the metropolitan area. The task force included members from the Louisiana State Police, New Orleans Police Department, Orleans Parish Sheriff's Office, Federal Bureau of Investigation, Drug Enforcement Agency, and Bureau of Alcohol, Tobacco, Firearms and Explosives.

While patrolling, the troopers received a "be-on-the-lookout" (BOLO) advisory for a dark-colored Lexus SUV reported stolen within the Fifth District on October 21, 2022. Within minutes, the troopers observed a dark blue Lexus SUV matching the BOLO description backed into a handicapped spot at Quicky's

1

Discount store near North Claiborne and Franklin Avenues. The vehicle displayed no handicapped tag, and a man, later identified as Charles Jones, was standing between the open driver's door and the door frame. Inside the vehicle were four passengers, identified as Isaiah Torregano (front passenger seat), Austin Jackson (rear driver's seat), Joseph Patterson (rear middle seat), and Jaunte Ross (rear passenger seat).

The troopers conducted an investigatory stop. As Trooper Kirsch approached, he detected the odor of marijuana emanating from the vehicle. Jones was immediately detained and handcuffed, and a rifle in plain view was recovered from the driver's floorboard where Jones had been standing. The four passengers were also ordered out of the vehicle, handcuffed, and detained. Additional task force members arrived to assist.

During a search of the vehicle, troopers recovered another rifle in plain view on the front passenger floorboard and two backpacks containing drugs and identification cards. The first backpack, found on the front passenger floorboard, contained six bags of marijuana, five MDMA pills, and Torregano's ID card. The second backpack, located on the rear driver's floorboard, contained six bags of marijuana and Jackson's ID card. Jones' ID card was found in the driver's door pocket. A pat-down search of Ross revealed a Glock handgun concealed in his waistband. The vehicle identification number confirmed the Lexus was stolen. Efforts to contact the owner were unsuccessful, and the vehicle was impounded.

On December 6, 2023, a bill of information was filed, charging the five occupants with unauthorized use of a motor vehicle under La. R.S. 14:68.4. Jones faced additional charges for possession of a firearm with an obliterated serial number. Torregano and Jackson were charged with possession with intent to

distribute MDMA and marijuana, and Torregano was also charged with possession of a firearm while in possession of a controlled dangerous substance, a violation of La. R.S. 14:95(E). Ross faced charges for unlawful possession of a firearm.

Defense counsel filed pretrial motions, including motions to suppress and motions for preliminary examination. On July 29, 2024, a motions hearing was conducted. The State called Trooper Kirsch to testify at the hearing; the defense called no witnesses. After hearing argument from both sides, the district court took the matter under advisement. On August 9, 2024, the district court issued its ruling. The court found that "the officers did have a legitimate reason for stopping the car" but that "once they got to the backpack[s], all of the passengers and the driver of the car ha[d] already been detained, so there [were] no exigent circumstances or no circumstance under which they did not need a warrant to go into the backpacks of the individuals."

Accordingly, the court granted the motions to suppress filed by Torregano and Jackson and suppressed the evidence (most notably, the narcotics) recovered from the backpacks. Relying on the suppression of the narcotics, the court found no probable cause to support the charge of illegal carrying of a weapon while in the possession of a controlled dangerous substance against Torregano. Further, the court found no probable cause to substantiate the charge of unauthorized use of a motor vehicle against the passengers, Torregano, Jackson, Patterson, and Ross. Though not pertinent to the relief sought in this writ, the district court found probable cause to substantiate the charge of unauthorized use of a motor vehicle against the driver, Jones. This writ followed.

**ASSIGNMENTS OF ERROR**

3

The State asserts the following assignments of error: (1) the trial court abused its discretion in suppressing the evidence contained within the backpacks found inside the vehicle; (2) the trial court erred in finding no probable cause as to the La. R.S. 14:95(E) charge pertaining to Isaiah Torregano; and (3) the trial court erred in finding no probable cause as to the La. R.S. 14:68.4 charge pertaining to the four passengers of the stolen vehicle.

## LAW AND DISCUSSION

***Assignment of Error No. 1: Suppression of Contents of Backpacks***

The State argues that the district court erred in suppressing the contents of the backpacks found inside the vehicle, and we agree.

This Court set forth the standard to be applied by the reviewing court when the issue is the district court's granting or denial of a motion to suppress in *State v. Debose*, 24-0217, pp. 6-7 (La. App. 4 Cir. 6/13/24), 390 So.3d 971, 977:

> District courts have great discretion when ruling on motions to suppress, and an appellate court will not disturb a district court's ruling on a motion to suppress unless the district court abused its discretion. *State v. Willis*, []22-0452, pp. 6-7 (La. App. 4 Cir. 9/1/22), 348 So.3d 167, 172 (quoting *State v. Polkey*, []20-0482, p. 3 (La. App. 4 Cir. 11/25/20), 310 So.3d 605, 608). The reason the district court's decision "on a motion to suppress ... is entitled to great weight" is "because the [district] court has the opportunity to observe the witnesses and weigh the credibility of their testimony." *Id.* at p. 7, 348 So.3d at 172 (alteration in original) (quoting *State ex rel. J.S.*, []08-1401, p. 4 (La. App. 4 Cir. 2/18/09), 6 So.3d 904, 908). As this Court has previously explained though, "a motion to suppress presents a mixed question of law and fact." *Id.* (citing *Polkey*, []20-0482, p. 4, 310 So.3d at 608). Thus, the appellate court reviews the underlying facts for an abuse of discretion "but reviews conclusions to be drawn from those facts *de novo.*" *Id.* When the facts are not disputed, however, then the appellate court need only "consider whether the trial court came to the proper legal determination under the undisputed facts." *Id.*

4

A review of the record shows the district court's granting of the motion to suppress was based on questions of law; thus, we conduct a *de novo* review.

Law enforcement officers are authorized to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity. *State v. Dupart*, 19-0521, p. 5 (La. App. 4 Cir. 10/16/19), 280 So.3d 1214, 1219; La. C.Cr.P. art. 215.1(A). "Reasonable suspicion" to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. *State v. Hughes*, 99-2554, p. 3 (La. App. 4 Cir. 5/31/00), 765 So.2d 423, 425. Additionally, a violation of a traffic regulation provides reasonable suspicion to stop a vehicle. *State v. Richardson*, 18-401, p. 4 (La. App. 5 Cir. 2/6/19), 265 So.3d 1006, 1011; *State v. Davis*, 09-452, p. 5 (La. App. 5 Cir. 1/26/10), 31 So.3d 513, 516; *see also State v. Waters*, 00-0356, p. 4 (La. 3/12/01), 780 So.2d 1053, 1056 (noting that "even relatively minor traffic violations provide an objective basis for lawfully detaining [a] vehicle and its occupants").

Troopers Kirsch and Cadet received a BOLO advisory for a dark-colored Lexus SUV that had been reported stolen. Minutes later, they observed a dark blue Lexus SUV matching the description of the stolen vehicle backed into the handicapped parking spot near the entrance to the Quicky's Discount store. The vehicle did not have a handicapped parking hang tag. We find that the troopers were justified in conducting an investigatory stop to investigate the theft of the vehicle and suspected traffic violation.

5

We next address the search of the vehicle and find that the search of the vehicle, including the backpacks, was reasonable under the automobile exception and the inevitable discovery doctrine.

Courts, including this Court, have consistently held that the odor of marijuana emanating from a vehicle provides officers with sufficient probable cause to believe that contraband relating to marijuana is located in the vehicle, and, based on that probable cause, to conduct a warrantless search of the vehicle. *State v. Johnson*, 21-0239, p. 14 (La. App. 4 Cir. 12/29/21), 334 So.3d 805, 814; *State v. Williams*, 12-0029, p. 6 (La. App. 4 Cir. 1/16/13), 108 So.3d 292, 295-96.

In *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (*per curiam*), the United States Supreme Court held that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. In *Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (*per curiam*), the Supreme Court explained that the "automobile" exception has no separate exigency requirement. The Fifth Circuit has also recognized that the "automobile" exception does not have an independent exigency requirement, and if probable cause exists for the search of the vehicle that is sufficient. *State v. Mitchell*, 10-334, p. 8 (La. App. 5 Cir. 10/26/10), 52 So.3d 155, 160. "The exigency is supplied by the inherent mobility of the vehicle and the citizen's lesser expectation of privacy." *Id.* (quoting *State v. Joseph*, 02-717, pp. 8-9 (La. App. 5 Cir. 6/27/03), 850 So.2d 1049, 1054).

In addition, the Louisiana Supreme Court has recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without

6

a warrant. *State v. Tatum*, 466 So.2d 29, 31 (La. 1985). "Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution." *Id.*

"The scope of the warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted, but rather, is defined by the object of the search and the places in which there is probable cause to believe it may be found." *Tatum*, 466 So.2d at 31 (citing *U.S. v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). Once probable cause for the search of a vehicle exists, a police officer has the authority to search those places in the vehicle in which there is probable cause to believe the object searched for may be found. *California v. Acevedo*, 500 U.S. 565, 570, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (holding that the police do not need a warrant to search a closed container found within a lawfully stopped vehicle when the officers have probable cause for the search) (citing *Ross*, 456 U.S. at 825, 102 S.Ct. at 2173).

In *Joseph*, 02-717, pp. 4-5, 850 So.2d at 1052, the defendant argued that the officers unlawfully searched the interior and trunk of the vehicle because no exigent circumstances existed to trigger the "automobile" exception since the defendant was already arrested and placed in the back of the police unit at the time the search was conducted. There, the court held that once probable cause for the search of the vehicle exists, the officer has the authority to search those places in the vehicle where there is probable cause to believe the object searched for may be found. *Id.*, p. 7, 850 So.2d at 1053-54. The court reasoned that, because the officer had probable cause to believe the defendant's vehicle contained drugs and drug paraphernalia following a canine sniff and seized the narcotics inside the defendant's jacket located in the vehicle, a warrantless search of the trunk of the

7

vehicle and the bag contained therein for contraband was constitutionally sanctioned. *Id.*

In *State v. Jackson*, 09-1983, p. 3 (La. 7/6/10), 42 So.3d 368, 370 (*per curiam*), the defendant filed a motion to suppress, arguing that because all of the occupants of the vehicle had been removed some distance away from the vehicle before the search of the vehicle, the officer's warrantless entry of the vehicle exceeded the scope of a search incidental to a lawful arrest of the driver for a traffic violation and was otherwise unsupported by any reasonable belief the vehicle contained evidence of a crime. The Supreme Court reinstated the trial court's ruling denying the motion to suppress. *Id.*, p. 12, 42 So.3d at 375. The Court found the officers lawfully stopped the vehicle after observing several traffic violations and the officer obtained "probable cause to search any closed containers he found inside . . . when the officer smelled the distinct odor of marijuana emanating from the interior of the car." *Id.*, p. 10, 42 So.3d at 374.

In the case *sub judice*, Trooper Kirsch obtained probable cause to search the vehicle, including any closed containers, once he smelled the odor of marijuana emanating from the interior of the car. Accordingly, we find that the search of the vehicle, including the two backpacks found therein, was constitutional under the "automobile" exception.

Additionally, the items recovered from the backpacks are admissible at trial under the inevitable discovery doctrine. The United States Supreme Court has held that unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by the police in a constitutional manner. *Nix v. Williams*, 467 U.S. 431, 446-47, 104 S.Ct. 2501, 2510-11, 81 L.Ed.2d 377 (1984).

In the case *sub judice*, the vehicle was impounded because the officers were unable to contact the owner to retrieve the vehicle. Trooper Kirsch explained that it was department policy to conduct an inventory search prior to towing a vehicle to make sure there are no valuables or firearms in the vehicle. The backpacks and their contents would have been discovered inevitably during an inventory search of the vehicle conducted prior to being towed. *See South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 3098-99, 49 L.Ed.2d 1000 (1976) (holding that inventory searches of automobiles "pursuant to standard police procedures are reasonable"); *State v. LaRue*, 368 So.2d 1048, 1050 (La. 1979) (following *Opperman*).

For these reasons, we find that the district court erred in granting Torregano and Jackson's motion to suppress and suppressing the evidence contained in the backpacks found inside the vehicle.

***Assignment of Error No. 2: Probable Cause to Charge Torregano with Illegal Carrying of a Weapon While in Possession of a Controlled Dangerous Substance***

The standard of review for a trial court's ruling on probable cause at a preliminary hearing is abuse of discretion. *State v. Rousset*, 20-0202, p. 5 (La. App. 4 Cir. 6/3/20), 302 So.3d 55, 60 (citing *State v. Hilton*, 16-0325, p. 3 (La. 3/24/16), 187 So.3d 981, 983).

If probable cause is not established, the court must order the defendant's release under La. C.Cr.P. art. 296. *State v. Lewis*, 09-0350, p. 5 (La. App. 4 Cir. 12/16/09), 28 So.3d 548, 552. However, such a finding does not dismiss the case, and the State may still proceed. *Id.*

To prove a violation of La. R.S. 14:95(E), the State must show (1) the defendant possessed within his immediate control a firearm or other

9

instrumentality customarily intended for use as a dangerous weapon and (2) that he did so while in possession of a controlled dangerous substance, during the sale of a controlled dangerous substance, or during the distribution of a controlled dangerous substance. *State v. Brown*, 42,188, pp. 47-48 (La. App. 2 Cir. 9/26/07), 966 So.2d 727, 759.

In the case *sub judice*, the State presented testimony that a rifle and a backpack containing narcotics were found in the area of the front passenger seat where Torregano was sitting. Despite this evidence, the district court found no probable cause for the charge of illegal carrying of a weapon while in possession of a controlled dangerous substance, reasoning that the suppression of the narcotics undermined the weapons charge. However, as previously discussed, the district court erred in suppressing the narcotics.

The State provided sufficient evidence to meet the low threshold of probable cause. The proximity of the rifle and narcotics to Torregano's seat supports a reasonable belief that he knowingly possessed both the firearm and the controlled substances. The totality of these facts justifies a person of average caution in believing that Torregano committed the offense.

Accordingly, the district court abused its discretion in finding no probable cause for the charge of illegal carrying of a weapon while in possession of a controlled dangerous substance. We find that the evidence presented was sufficient to hold Torregano on this charge.

### Assignment of Error No. 3: Probable Cause to Charge Passengers with Unauthorized Use of a Motor Vehicle

The offense of unauthorized use of a motor vehicle is defined as "the intentional taking or use of a motor vehicle which belongs to another, either

10

without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La. R.S. 14:68.4(A). To prove a violation, the State must show the defendant intentionally took or used a motor vehicle belonging to another without that person's consent. *State in Int. of C.T.*, 16-0939, p. 2 (La. 10/18/17), 236 So.3d 1210, 1211. Moreover, the statute requires *mens rea* or criminal intent. *State v. Bias*, 400 So.2d 650, 652-53 (La. 1981).

While mere presence inside a stolen vehicle is insufficient to establish unauthorized use, as shown in *State in the Interest of O.B.*, 559 So.2d 31 (La. App. 4th Cir. 1990), *State v. Stevenson*, 02-1152 (La. App. 4 Cir. 1/22/03), 839 So.2d 203, and *State in Interest of H.N.*, 97-0982 (La. App. 4 Cir. 7/8/98), 717 So.2d 666, those cases are distinguishable. In each, the passengers were not engaged in any additional criminal activity, making probable cause more difficult to establish. In contrast, when passengers actively participate in or benefit from criminal conduct while occupying a stolen vehicle, a reasonable belief of shared intent and knowledge arises, satisfying the threshold for probable cause.

In the case *sub judice*, the evidence supports a reasonable belief that Torregano, Jackson, Patterson, and Ross knew the Lexus was stolen. The vehicle contained two rifles in plain view, and the strong odor of marijuana detected by Trooper Kirsch was linked to two backpacks filled with contraband, including individually packaged marijuana and MDMA, along with identification cards belonging to Torregano and Jackson. The presence of firearms and drugs demonstrates active criminality and distinguishes this case from those cited earlier. These circumstances provide context for a reasonable belief that the passengers

11

were not merely unaware or innocent occupants but were complicit in the vehicle's use and its broader illegal purposes.

At a preliminary examination, the State is only required to meet the low threshold of presenting *prima facie* evidence sufficient to justify a person of average caution in believing the defendants committed a crime. Here, the evidence overwhelmingly meets this standard. Passengers who knowingly participate in or benefit from the use of a stolen vehicle should expect to share accountability with the driver, particularly when the vehicle serves as a tool for collective criminal conduct. Recognizing shared culpability ensures that all participants are held accountable.[1]

Accordingly, we find the district court erred in concluding there was no probable cause to support the charges of unauthorized use of a motor vehicle against the passengers of the vehicle. The ruling should be reversed.

## CONCLUSION

For the foregoing reasons, we grant the State's writ and reverse the district court's August 9, 2024 ruling granting Torregano and Jackson's motions to suppress and suppressing the contents of the backpacks and finding of no probable cause on the charge of unauthorized use of a motor vehicle against Torregano, Jackson, Patterson, and Ross and on the charge of illegal carrying of a weapon while in the possession of a controlled dangerous substance against Torregano.

**WRIT GRANTED;
REVERSED**

---

[1] Limiting charges only to the driver, when passengers actively participate in criminal acts, ignores the collective nature of such crimes. This approach allows criminal leaders to exploit vulnerable participants, such as juveniles, by assigning them the driver role to absorb legal consequences, while the more culpable actors evade responsibility.